IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| BRETT LORENZO FAVRE,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK JUSTIN MCAFEE,<br><br>Defendant. | Case No. 2:23-cv-45-KS-MTP<br><br>Jury Trial Demanded |

## AMENDED COMPLAINT

**COMES NOW**, Plaintiff, Brett Lorenzo Favre ("Favre" or "Plaintiff"), by and through the undersigned legal counsel, and files his Amended Complaint against Defendant, Patrick Justin McAfee ("McAfee" or the "Defendant"). In support thereof, Favre alleges as follows:

## NATURE OF THE CASE

1. McAfee, on his popular national sports podcast—which has an audience of millions of subscribers and hundreds of thousands of daily viewers—has made egregiously false and defamatory statements that Favre, the Hall of Fame quarterback and native son of Mississippi, was a thief who was "stealing from poor people in Mississippi." There is no basis for these outrageous falsehoods, which McAfee made knowing that they were false or, at a minimum, with reckless disregard for the fact that they were false.

2. Favre brings this action to clear his good name and to redress the injury to his reputation caused by McAfee's false and defamatory statements.

3. Favre is a retired professional athlete who played in the National Football League ("NFL") for over 20 years, primarily as the Green Bay Packers' quarterback. Favre has since been engaged in endorsing various products and businesses, making appearances at events, and hosting

a radio show on SiriusXM. Favre has also focused on charities and causes that are important to him. This includes his Favre 4 Hope Foundation, which he and his wife Deanna founded in 1995 and through which he has contributed millions of dollars to charities across his home state of Mississippi and elsewhere, including Make-A-Wish Foundation of America, Hope Haven, Ribbon of Hope, and the Special Olympics. Favre and his wife have also donated millions of dollars through charity to help underprivileged and underserved children in Mississippi, Wisconsin, and Minnesota, and have contributed to the Ronald McDonald House in Minneapolis. Favre has also supported various causes, including his alma mater, The University of Southern Mississippi ("Southern Miss"), and the development of medication to treat and prevent concussions, an all-too-common football injury.

4.  McAfee, also a retired NFL player, is the host of a national weekday sports talk show and podcast, The Pat McAfee Show.

5.  In November 2022, McAfee made statements on The Pat McAfee Show falsely accusing Favre of "steal[ing] from the poor," "[taking] money right out of their pockets" and "stealing from poor people in Mississippi." A month later, McAfee made a similar statement on Twitter. Despite the fact that Favre had not done any of those things, McAfee could not resist the opportunity to trade on Favre's celebrity to make headlines and gain audience by falsely and maliciously sullying Favre's reputation.

6.  Before filing this complaint, Favre's counsel sent McAfee a letter demanding that McAfee retract and apologize for his defamatory statements and cease and desist from making further defamatory falsehoods against Favre. McAfee has refused to do so.

7.  Knowing or with reckless disregard for the fact that his statements were false, McAfee accused Favre of committing serious crimes, and he has refused to retract or apologize

for these statements. Those false and malicious statements about Favre constitute defamation *per se* and entitle Favre to compensatory damages for the harm he has suffered and punitive damages for McAfee's reprehensible conduct.

## PARTIES

8. Plaintiff, Brett Lorenzo Favre, is a private citizen and resident of Sumrall, Lamar County, Mississippi.

9. Defendant, Patrick Justin McAfee, is an individual domiciled in the State of Indiana, and may be served with process as authorized by law.

## JURISDICTION AND VENUE

10. Plaintiff filed his Complaint against Defendant on February 9, 2023, in the Circuit Court of Lamar County, Mississippi.

11. The Circuit Court of Lamar County had personal jurisdiction over Defendant pursuant to Mississippi Code Ann. § 13-3-57 because Defendant committed a tort in whole or in part in Mississippi.

12. Venue was proper in the Circuit Court of Lamar County pursuant to Miss Code Ann. § 11-11-3(1)(a)(i) because a substantial event that caused the injury occurred in that County. Alternatively, venue was proper in the Circuit Court of Lamar County pursuant to Miss. Code Ann. § 11-11-3(1)(b) because Defendant is a nonresident and Plaintiff resides in Lamar County.

13. On March 24, 2023, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, and Defendant has alleged and acknowledged proper jurisdiction within this Court.

14. Defendant has asserted that venue is proper in this Court pursuant to 28 U.S.C. § 1446 because this is the District in which the state court action was originally pending.

## STATEMENT OF FACTS

### A. Background

15. Favre was born and raised in Mississippi, and attended Hancock North Central High School in Kiln, Mississippi and The University of Southern Mississippi.

16. Favre went on to a highly successful career in the NFL, playing for over 20 years, primarily as quarterback for the Green Bay Packers. During his career, he had two Super Bowl appearances, including a victory in Super Bowl XXXI. He also earned three straight NFL Most Valuable Player Awards. Since retiring, Favre was inducted into the Pro Football Hall of Fame in 2016 and continued to be sought after by multiple companies, including Wrangler and CopperFit, to endorse and appear in television commercials for their products. Favre has also co-hosted a regular radio show on SiriusXM, "The SiriusXM Blitz With Brett Favre and Bruce Murray," and has made paid appearances at autograph signings and speaking events.

17. Favre has also focused on his charitable endeavors, including efforts to support his alma mater, Southern Miss, as well as his work with the Favre 4 Hope Foundation, which he and his wife Deanna founded in 1995 and through which he has contributed millions of dollars to charities across his home state of Mississippi and elsewhere, including such charities as Make-A-Wish Foundation of America, Hope Haven, Ribbon of Hope, and the Special Olympics. Favre and his wife have also donated millions of dollars through charity to help underprivileged and underserved children in Mississippi, Wisconsin, and Minnesota, and have contributed to the Ronald McDonald House in Minneapolis. Favre also has supported various causes, including the development of medication to treat and prevent concussions, an all-too-common football injury.

### B. McAfee's Egregious Falsehoods About Favre

18. McAfee, also a retired NFL player, is the host of a national weekday sports talk show and podcast, The Pat McAfee Show. The Pat McAfee Show features a video simulcast on

4

the streaming platform YouTube, and is available for download on various internet platforms, including Apple Podcasts, Google Podcasts, Spotify and TuneIn.

19. Since The Pat McAfee Show's inception in the Fall of 2019, McAfee has built a fan base of more than 3 million social media followers. Video clips of the Pat McAfee Show posted on the Pat McAfee Show's YouTube channel, which has over 2.1 million subscribers, regularly see traffic of over 100,000 views each.

20. On November 30, 2022, during an episode of The Pat McAfee Show, which was posted to The Pat McAfee Show's YouTube channel, McAfee falsely accused Favre of serious crimes, stating:

- "Every time [Favre's] name gets brought up, we have to mention that he tied the hands of the poor people and took money right out of their pockets."

- "[Favre is] certainly in the middle of stealing from poor people in Mississippi right now."

21. McAfee published yet another statement defaming Favre on Twitter on December 24, 2022. In his tweet, which included a video of NFL wide receiver DeVonta Smith celebrating a touchdown by pantomiming stealing from an oversized Salvation Army basket, McAfee stated, "Devonta Smith doing 'The Favre' after that touchdown was crazy":



22. As the above image shows, McAfee's defamatory Tweet was viewed nearly 4 million times, and tens of thousands of Twitter users "retweeted," "quoted," or "liked" it.

23. McAfee knew that—or had a high degree of awareness of the fact that—he had no basis for his false statements that Favre had stolen money from poor people. Before making his false statements, McAfee, who had no personal knowledge of any of the relevant facts, relied on media reports that Favre was named as one of numerous defendants in a civil lawsuit brought by the Mississippi Department of Human Services (MDHS) to recover state funds that MDHS itself and others had allegedly misused. No media report or anything or anyone else had stated that Favre had stolen any money from anyone. In fact, many of those same reports stated that criminal charges had been brought against certain of the defendants—but not against Favre. Likewise, even if McAfee had himself reviewed the court filings in the MDHS civil litigation or any government documents, none of the filings in that action—or in any other legal proceeding—or any government documents had alleged or argued that Favre had stolen any money from anyone. All of these facts have remained true through the present day: no reputable media report or official document has ever stated that Favre stole any money from poor people in Mississippi or from anyone else, anywhere else.

24. Nor was it ever alleged or argued in the MDHS proceeding that Favre had ever knowingly received welfare funds—much less that Favre had ever stolen money from poor people in Mississippi. Accordingly, an NBC News article from September 14, 2022 reported that communications produced in the civil litigation did "not establish that Favre knew the public funds discussed were welfare money." *See* Laura Strickler and Ken Dilanian, "Santa came today," NBC News (Sept. 14, 2022), https://www.nbcnews.com/politics/politics-news/brett-favre-texts-show-role-mississippi-welfare-scandal-rcna47654.

25. When McAfee uttered his statements that Favre had stolen money from poor people, McAfee therefore was not aware and could not have been aware of any media reports, government documents, or court filings stating that Favre had stolen money from poor people or had committed any other crime—because no such reports, documents, or filings existed. To the contrary, the filings and reports suggested precisely the opposite: that Favre was not accused of any crime and did not even know that the funds at issue were welfare funds—which, in fact, he did not know.

26. Thus, when McAfee uttered the remarks at issue, either (i) he knew that his remarks were fabrications and the products of his imagination or (ii) he harbored serious doubts about whether his remarks were true and in fact knew that they were probably false. Yet he uttered the remarks anyway, without caring whether he was speaking truthfully or falsely, ultimately to cast Favre in the worst possible light.

27. Moreover, as a sports commentator and a fellow former NFL player himself, McAfee was generally familiar with Favre's career and life story. McAfee was aware that, throughout Favre's life, Favre had never committed—and had never been accused of committing—theft, larceny, fraud, or any other such crimes. McAfee's knowledge of Favre's background, combined with McAfee's awareness that there was no basis for stating that Favre had stolen money, caused McAfee to know that his statements were false or at a minimum to have a high degree of awareness that they were inherently improbable and probably false. Yet McAfee pressed forward and jumped to a baseless conclusion contradicted by the very reports he relied on—all for the sake of a hot take, and without regard to the ensuing harm to Favre's name.

28. When McAfee made his false statements, he was aware that stealing from poor people is a serious crime in all States, including Mississippi, and that accusing someone of stealing

7

from poor people is a serious accusation.  As a native English speaker, McAfee knew that "stealing" means to knowingly and unlawfully take the property of another with intent to keep it.  McAfee was also aware that, in the modern media landscape, scandal, controversy and notoriety sell.  McAfee thus deliberately advanced a serious and provocative accusation against Favre, despite knowing that his accusation was false—or, at a minimum, despite entertaining serious doubts about whether his accusation was true—because making such a serious, provocative, and inherently improbable accusation could generate publicity and attention for his media channel, which could usher in financial rewards and other benefits.

29. McAfee has not merely misinterpreted articles and documents about a complex litigation.  Rather, McAfee's awareness of no media reports, government documents, or court filings stating that Favre had stolen money from poor people—far from it, reports on and filings in the MDHS litigation indicated that Favre did not knowingly receive welfare funds and that, unlike others, Favre was not charged with a crime—combined with McAfee's awareness of Favre's background and McAfee's motivation to spread a scandalous falsehood, shows that McAfee made the defamatory statements while knowing that they were false—or, at a minimum, with a high degree of awareness that they were probably false.

30. On February 3, 2023, counsel for Favre demanded that McAfee retract and apologize for his defamatory statements.  McAfee refused, prompting Favre to file this action.

31. McAfee's refusal to retract his defamatory statements further demonstrates that McAfee is purposefully avoiding the truth, intentionally neglecting to investigate further, and deliberately maintaining his accusation to benefit from the gravity, controversy, and inherent improbability of his defamatory remarks.

32. Simply put, McAfee will not back down because the lie is the point. McAfee insists on knowingly peddling lies about Favre because doing so helps McAfee accumulate more social media views, likes, and followers.

33. Further evidencing his malice, McAfee addressed this defamation action on his podcast, and again refused to retract or apologize for his defamatory statements. He instead stated: "our job is to report the news," "we owe the sports media world our coverage of it," and "we take our job seriously as journalists." McAfee's reference to his purported journalistic integrity further precludes any suggestion that McAfee was merely engaging in comedic jest or hyperbolic rhetoric when he accused Favre of a serious crime.

34. McAfee then doubled down on his lies. In a tweet referencing this defamation action, he urged his followers not to "allegedly, reportedly steal from those who need it most." Through McAfee's own words, McAfee has erased any doubt that he was knowingly peddling lies about Favre.

35. McAfee's false statements that Favre stole money from poor people in Mississippi are malicious lies that injured Favre's reputation and caused Favre financial harm by, among other things, diminishing Favre's ability to generate income through endorsements, appearances at events or on radio and television programs, or hosting his own radio or television program.

36. McAfee should be held responsible for his lies and compelled to pay Favre for the damage he has caused, as well as punitive damages for his reprehensible conduct.

## CAUSE OF ACTION
**(Defamation and Defamation *Per Se*)**

37. Favre incorporates by reference all of the preceding paragraphs as if fully set forth herein.

38. McAfee published the foregoing statements of purported fact referring specifically to Favre, by name, on his podcast, The Pat McAfee Show—which is streamed for millions of viewers across the nation via YouTube and via various other internet platforms, including Apple Podcasts, Google Podcasts, Spotify and TuneIn—and on Twitter.

39. The foregoing statements by McAfee were false in their particular details and in their gist and essence in the entire context in which they were made.

40. The foregoing statements by McAfee were defamatory, libelous, and slanderous and in making the statements, McAfee acted with actual malice. McAfee's awareness of no media reports, government documents, or court filings stating that Favre had stolen money—far from it, reports on and filings in the MDHS litigation indicated that Favre did not knowingly receive welfare funds and that, unlike others, Favre was not charged with a crime—combined with McAfee's awareness of Favre's background and the inherent improbability of his statements, caused McAfee to either (i) know that his statements were false fabrications or (ii) entertain serious doubts about whether his statements were true. Yet McAfee uttered the statements anyway, ultimately to cast Favre in the worst possible light and accrue the financial and other benefits of making such a scandalous accusation. Put differently, McAfee made the statements with knowledge that they were false—or, at a minimum, with reckless disregard for whether they were false. His refusal to retract his false statements, and his doubling down on them, further confirm his actual malice.

41. The foregoing defamatory statements by McAfee were not protected by any privilege.

42. The foregoing defamatory statements by McAfee constitute defamation *per se* in that they were clearly directed at Favre and clearly and falsely state that Favre committed a crime by stealing from poor Mississippians. The foregoing defamatory statements by McAfee also injured Favre's reputation and exposed him to public hatred, animus, contempt or ridicule, degraded him in society, lessened him in public esteem, or lowered him in the confidence of the community.

43. McAfee made the defamatory statements of purported fact knowing they were false or, at a minimum, with reckless disregard for the fact that they were false.

44. As a proximate result of the publication of these false and defamatory statements, Favre has suffered damages in an amount to be determined at trial.

## DAMAGES

45. Favre incorporates by reference all of the preceding paragraphs as if fully set forth herein.

46. Favre is entitled to nominal and general damages resulting from McAfee's defamation, including compensation for injury to Favre's character and reputation.

47. Favre is also entitled to actual or special damages, including specifically the pecuniary loss suffered because of McAfee's defamation.

48. In addition to the damages set forth above, Favre seeks to recover punitive or exemplary damages against McAfee for his conduct, which constitutes malice. Further, McAfee acted with a specific intent to cause injury to Favre or conscious indifference to the rights, safety, or welfare of Favre with actual, subjective awareness that McAfee's conduct involved an extreme degree of risk of harm to Favre. Favre also seeks punitive and exemplary damages in order to

punish and deter the outrageous conduct taken in heedless and reckless disregard for Favre's reputation and as a result of McAfee's conscious indifference in harming his reputation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff Favre respectfully requests that this Court enter judgment awarding Plaintiff the following relief:

a. Nominal, general, actual/special, exemplary, and punitive damages as described above, in an amount to be determined at trial;

b. The costs of litigation, including reasonable legal and consulting fees, expert witness fees, and any other costs deemed reasonable;

c. Pre- and post-judgment interest at the maximum rate allowed by law;

d. Such further and other relief, both general and special, at law or in equity, to which Plaintiff may show himself justly to be entitled, or as this Court may deem appropriate; and

e. Any other damages or other relief deemed just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

**RESPECTFULLY SUBMITTED,** this the 14th day of April, 2023.

                                                        **BRETT LORENZO FAVRE, Plaintiff**

                                              By:   /s/ *Eric D. Herschmann*
                                                     ERIC D. HERSCHMANN, Attorney for Plaintiff

**ERIC D. HERSCHMANN, Esq.** (*admitted pro hac vice*)
210 Lavaca Street
Austin, Texas 78701
Telephone: (512) 551-3344
Facsimile: (512) 798-4376
Email:  EDHNotice@gmail.com

**KASOWITZ BENSON TORRES LLP**
Daniel R. Benson, Esq. (*admitted pro hac vice*)
Email:  DBenson@kasowitz.com
Jennifer M. McDougall, Esq. (*admitted pro hac vice*)
Email:  JMcDougall@kasowitz.com
Daniel J. Koevary, Esq. (*admitted pro hac vice*)
Email:  DKoevary@kasowitz.com
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

**MICHAEL J. SHEMPER, PLLC**
Michael J. Shemper (MSB# 100531)
Attorney at Law
140 Mayfair Road, Suite 1200
Hattiesburg, MS   39402
Telephone: (601) 545-7787
Facsimile: (601) 545-1711
Email:  michael@shemperlaw.com

**SULLIVAN & SULLIVAN, PLLC**
James Robert "Bob" Sullivan, Jr. (MSB# 8613)
Attorneys at Law
424 Sawmill Road
P. O. Box 45
Laurel, MS  39441
Telephone: (601) 428-1505
Facsimile: (601-428-1590)
Email:  bob@sst-lawoffice.com

*Counsel for Plaintiff Brett Lorenzo Favre*