## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**        **PLAINTIFF**

**v.**        **CAUSE NO. 22-cv-00286-EFP**

**JOHN DAVIS**
**MISSISSIPPI COMMUNITY EDUCATION CENTER, INC.**
**NEW LEARNING RESOURCES, INC.**
**NANCY WHITTEN NEW**
**ZACHARY W. NEW**
**JESSE STEVEN NEW, JR.**
**MAGNOLIA STRATEGIES LLC**
**N3 HOLDINGS LLC**
**FAMILY RESOURCE CENTER OF NORTH MISSISSIPPI, INC.**
**CHRISTI H. WEBB**
**AMY S. HARRIS**
**BRETT LORENZO FAVRE**
**THE UNIVERSITY OF SOUTHERN MISSISSIPPI ATHLETIC FOUNDATION**
**JACOB W. VANLANDINGHAM**
**PREVACUS, INC.**
**PRESOLMD, LLC**
**PAUL VICTOR LACOSTE**
**VICTORY SPORTS FOUNDATION, INC.**
**MARCUS L. DUPREE**
**MARCUS DUPREE FOUNDATION, INC.**
**TED M. DIBIASE, SR.**
**HEART OF DAVID MINISTRIES, INC.**
**TED M. ("TEDDY") DIBIASE, JR.**
**PRICELESS VENTURES LLC**
**FAMILIAE ORIENTEM LLC**
**BRETT DALE DIBIASE**
**RESTORE2 LLC**
**NORTHEAST MISSISSIPPI FOOTBALL COACHES ASSOCIATION**
**RISE LUXURY REHAB, LLC d/b/a RISE IN MALIBU**
**ADAM ANDREW SUCH**
**SBGI, LLC**
**NICHOLAS CRONIN COUGHLIN**
**NCC VENTURES LLC**
**BRIAN JEFF SMITH**
**JTS ENTERPRISES LLC**
**AUSTIN G. SMITH**
**LOBAKI FOUNDATION**
**LOBAKI, INC.**
**WILLIAM LONGWITZ**

1

**Exhibit O**

**INSIDE CAPITOL LLC**
**SOUL CITY HOSPITALITY LLC**
**CHASE COMPUTER SERVICES**
**SOUTHTEC, INC.**
**JACOB BLACK**
**WILLIAM GARRIGUES ("GARRIG") SHIELDS**
**WILLIAMS, WEISS, HESTER, & CO., PLLC**                    **DEFENDANTS**

## FIRST AMENDED COMPLAINT

The Plaintiff Mississippi Department of Human Services ("MDHS") files this First Amended Complaint, stating as follows:

### JURY TRIAL DEMAND

Pursuant to Miss. R. Civ. P. 38 and Miss. Const. art. 3, § 31, MDHS asserts its constitutional right to trial by jury.

### PARTIES

1.      Plaintiff MDHS is an Agency of the State of Mississippi. MDHS is designated by Mississippi law as the State Agency exclusively responsible for administering, consistent with federal and Mississippi statutes, the federally-authorized and federally-funded anti-poverty (or "welfare") program known as the Temporary Assistance for Needy Families program, or "TANF." The former name of MDHS was the State Department of Public Welfare. The principal state office of MDHS is located in the First Judicial District of Hinds County, Mississippi.

2.      Defendant John Davis is an adult resident of Lincoln County, Mississippi, who may be served at his residence of 502 Charles Street, Brookhaven, Mississippi.

3.      Defendant Nancy Whitten New is an adult resident of the Jackson, Mississippi area, who may be served at her residence of 1800 Sheffield Drive, Jackson, Mississippi 39211-5743, 111 Harper Street, Ridgeland, Mississippi 39157-8675, or P. O. Box 12347, Jackson, Mississippi 392362347.

2

4.     Defendant Zachary Whitten ("Zach") New is an adult resident of Madison County, Mississippi, who may be served at his residence of 146 Bridgewater Crossing, Ridgeland, Mississippi 39157-8603.

5.     Defendant Jesse S. New, Jr. is an adult resident of Jackson, Mississippi, who may be served at his residence located at 5 Sheffield Court, Jackson, Mississippi, or at his office address located at 500 Greymont Avenue, Suite E, Jackson, Mississippi.

6.     Defendant Mississippi Community Education Center, Inc. ("MCEC"), is a Mississippi corporation, purporting to function as a "non-profit corporation." MCEC may be served with process upon its Chief Executive Officer, Nancy New, at her residential address of 1800 Sheffield Drive, Jackson, Mississippi, or upon Defendant Jesse S. New, Jr., at the location of his residence at 5 Sheffield Court, Jackson, Mississippi, or at his office address located at 500 Greymont Avenue, Suite E, Jackson, Mississippi.

7.     Defendant New Learning Resources, Inc. (incorrectly named as New Learning resources Foundation, Inc., in the previous Complaint), is a Mississippi corporation, with offices located at 1417 Lelia Drive in Jackson, Mississippi. New Learning Resources may be served with process on its President, Nancy New, at her residential address of 1800 Sheffield Drive, Jackson, Mississippi, or upon its Registered Agent, Zachary New, at 1417 Lelia Drive, Jackson, Mississippi, or at his residence of 146 Bridgewater Crossing, Ridgeland, Mississippi 39157-8603.

8.     Defendant Magnolia Strategies LLC is a Mississippi limited liability company, which may be served with process upon its managing member and owner, Jesse S. New, Jr., at his residence located at 5 Sheffield Court, Jackson, Mississippi, or at his office address located at 500 Greymont Avenue, Suite E, Jackson, Mississippi.

3

9.    Defendant N3 Holdings LLC is a Mississippi limited liability company, which may be served through service on its managing member and owner, Jesse S. New, Jr., at his residence located at 5 Sheffield Court, Jackson, Mississippi, or at his office address located at 500 Greymont Avenue, Suite E, Jackson, Mississippi, or at 1417 Lelia Drive, Jackson, MS 39236.

10.    Defendant Family Resource Center of North Mississippi, Inc., is a Mississippi corporation, purporting to be a "non-profit corporation," which may be served through its Registered Agent Amy S. Harris (or its President and Chief Executive Officer, Christi Webb), at its location of 425 Magazine Street, Tupelo, Mississippi (or 507 South Church Street, Tupelo, Mississippi).

11.    Defendant Christi H. Webb is an adult resident of Baldwyn, Mississippi, who may be served at her residence at 836 Mallard Lake Drive, Baldwyn, Mississippi, or at her workplace located at 425 Magazine Street, Tupelo, Mississippi (or 507 South Church Street, Tupelo, Mississippi).

12.    Defendant Amy S. Harris is an adult resident of Lee County, Mississippi and an attorney practicing law in Tupelo, Mississippi, who may be served at her residential address of 4891 Meadow Circle, Belden, Mississippi 38826-9542.

13.    Defendant the University of Southern Mississippi Athletic Foundation is a private non-profit foundation organized under the laws of Mississippi, which may be served with process on its Chief Executive Officer, Jeremy McClain, at 118 College Drive #5017, Hattiesburg, Misssissippi 39406-0001.

14.    Defendant Brett L. Favre is an adult resident of Lamar County, Mississippi, who may be served at his principal residential address of 7698 U.S. Highway 98 West, Sumrall,

4

Mississippi, or at his business addresses of 1 Willow Bend Drive, Hattiesburg, Mississippi, or 8 Crane Park, Hattiesburg, Mississippi.

15. Defendant Jacob W. ("Jake") VanLandingham is an adult resident of Tallahassee, Florida, who personally solicited securities investments in Mississippi, as described below, and who may be served at the following physical addresses all located within Tallahassee, Florida: 2035 East Paul Dirac Drive; 5430 Pedrick Crossing Drive; 338 Ruger Court; 2570 Manassas Way, or 2006 Longview Drive.

16. Defendant Prevacus, Inc., is a for-profit corporation established under the laws of Delaware, which (through conduct described below) solicited investments in Mississippi, and which maintains its principal place of business in Tallahassee, Florida, where it may be served through service on its Registered Agent and Chief Executive Officer, Defendant Jacob W. VanLandingham, at the following addresses all within Tallahassee, Florida: 1400 Village Square Boulevard, Suite 3 No 414; 2035 East Paul Dirac Drive; 5430 Pedrick Crossing Drive; 338 Ruger Court; 2570 Manassas Way, or 2006 Longview Drive.

17. Defendant PreSolMD, LLC, is a Florida limited liability company, located at 1400 Village Square Boulevard, Suite 3 No 414, Tallahassee, Florida, which solicited investments in Mississippi, through conduct on its behalf as described below, and which may be served through service on its Registered Agent, Defendant Jacob W. VanLandingham, at the following addresses all within Tallahassee, Florida: 1400 Village Square Boulevard, Suite 3 No 414; 2035 East Paul Dirac Drive; 5430 Pedrick Crossing Drive; 338 Ruger Court; 2570 Manassas Way, or 2006 Longview Drive.

5

18.     Defendant Paul V. Lacoste is an adult resident of Madison, Mississippi, who may be served at his residential address of 208 Belle Rose Circle, Madison, Mississippi, or at 2349 Twin Lakes Circle, Jackson, Mississippi.

19.     Defendant Victory Sports Foundation, Inc., a Mississippi corporation purporting to be a "non-profit corporation," may be served through service on its Registered Agent, X.M. Frascogna III, at the location of 4400 Old Canton Road, Suite 220, Jackson, Mississippi.

20.     Defendant Marcus L. Dupree is an adult resident of Madison County, Mississippi, who may be served at his residential address of 240 Highland Hills Lane, Flora, Mississippi.

21.     Defendant Marcus Dupree Foundation, Inc., a Mississippi corporation purporting to be a "non-profit corporation," may be served through service on its President, Defendant Marcus L. Dupree, at his residential address of 240 Highland Hills Lane, Flora, Mississippi.

22.     Defendant Ted M. ("Teddy") DiBiase, Jr., is an adult resident of Madison, Mississippi, who may be served at his residential address of 105 LaSalle Street, Madison, Mississippi, or at 115 Rosedowne Road, Madison, Mississippi.

23.     Defendant Priceless Ventures, LLC, is a dissolved Mississippi limited liability company, which may be served through service on its registered agent (and member and principal), Defendant Teddy DiBiase, Jr., at his same residential addresses of 105 LaSalle Street, Madison, Mississippi, or 115 Rosedowne Road, Madison, Mississippi.

24.     Defendant Familiae Orientem LLC, is a limited liability company organized under the laws of the State of Wyoming, with its principal place of business at 8919 Pace Road, Meridian, Mississippi, 39305, which may be served with process on its registered agent, Scott Elliott, at 8919 Pace Road, Meridian, Mississippi 39305, or upon its member, Teddy DiBiase, Jr, at his residential

6

addresses of 105 LaSalle Street, Madison, Mississippi, or 115 Rosedowne Road, Madison, Mississippi.

25.     Defendant Ted M. DiBiase, Sr., is an adult resident of Clinton, Hinds County, Mississippi, who may be served at his residence located at 103 Claiborne Drive, Clinton, Mississippi, or at 126 Ellicot Burn, Clinton, Mississippi.

26.     Defendant Heart of David Ministries, Inc., is a Mississippi corporation which purports to be a "non-profit corporation," who may be served with process upon Ted DiBiase, Sr. at 103 Claiborne Drive, Clinton, Mississippi, or at 126 Ellicot Burn, Clinton, Mississippi, or upon its registered agent, Joe R. Lovelady, Sr., at 426 S Lamar Boulevard, Oxford, Mississippi 38655.

27.     Defendant Northeast Mississippi Football Coaches Association ("NEMFCA") is a voluntary association which maintains its principal place of business at the address of 512 North 4th Street, Baldwyn, Mississippi 38824.

28.     Defendant Brett D. DiBiase is an adult resident of Clinton, Mississippi, and may be served at his residential address of 110 Navajo Circle, Clinton, Mississippi 39056.

29.     Defendant Restore2 LLC is an administratively dissolved Mississippi limited liability company owned by Defendant Brett D. DiBiase, and may be served through service on Brett D. DiBiase at his residential address, or on the LLC's registered agent pursuant to Miss. Code Ann. § 79-29-831(1), LEGALINC Corporate Services, Inc., located at 4780 Interstate 55 North, Suite 100, Jackson, Mississippi 39211.

30.     Defendant Rise Luxury Rehab, LLC, doing business as Rise in Malibu ("Rise in Malibu"), is a limited liability company organized under the laws of the State of Delaware, which may be served through service at its principal place of business at 27551 Pacific Coast Highway, Malibu, California 90265.

#100657939v13

31.     Defendant Adam Andrew Such is an adult resident of Raymond, Mississippi, who may be served at his residential address of 200 Cedar Valley Road, Raymond, Mississippi.

32.     Defendant SBGI, LLC, is a limited liability company organized under the laws of the State of Arizona, whose managing member and owner is Adam Andrew Such, who may be served at his residential address of 200 Cedar Valley Road, Raymond, Mississippi.

33.     Defendant Nicholas Cronin Coughlin is an adult resident of Ridgeland, Mississippi, who may be served at his residential address of 206 Woodrun Cove, Ridgeland, Mississippi.

34.     Defendant NCC Ventures LLC, is a Mississippi limited liability company, which may be served through service upon its managing member, Nicholas Coughlin, at his residential address of 206 Woodrun Cove, Ridgeland, Mississippi.

35.     Defendant Brian J. Smith is an adult resident of Lincoln County, Mississippi, who may be served at his residential address of 502 Charles Street, Brookhaven, Mississippi.

36.     Defendant JTS Enterprises LLC is a limited liability company organized under the laws of the State of Mississippi, with its principal place of business at 117 W Cherokee St, Brookhaven, MS 39601.  It may be served with process on its registered agent, LEGALINC Corporate Services Inc., at 4780 I-55, Suite 100, Jackson, MS 39211.

37.     Defendant Austin G. Smith is an adult resident of Davidson County, Tennessee, who may be served at 2718 Westwood Ave., Nashville, Tennessee 37212.

38.     Defendant Lobaki Foundation is a Mississippi corporation that purports to be a "non-profit corporation," with its principal office address of 736 S President St., Apt 106, Jackson, Mississippi.  It may be served with process upon its registered agent, Vincent Thomas Jordan, at 4120 Dogwood Drive, Jackson, Mississippi.

8

39.     Defendant Lobaki, Inc. is a Mississippi corporation with its principal place of business at 736 S. President St., Suite 106, Jackson, Mississippi, which may be served with process upon its registered agent, Kevin Loud, at 736 S. President Street, Suite 106, Jackson, Mississippi, or upon its CEO, Amber Coeur, at 127 S. Roach St., #1701, Jackson, Mississippi.

40.     Defendant William Longwitz is an adult resident of Orleans Parish, Louisiana, who may be served with process at his residential address of 3436 Magazine Street, Apartment 540, New Orleans, Louisiana 70115.

41.     Defendant Inside Capitol LLC is a dissolved limited liability company organized under the laws of the State of Mississippi, which may be served with process pursuant to Miss. Code Ann. § 79-29-831(1) on its registered agent for service of process, William Longwitz, at his residential address of 3436 Magazine Street, Apartment 540, New Orleans, Louisiana 70115.

42.     Defendant Soul City Hospitality LLC, is a Mississippi limited liability company which may be served through service on its principal business address of 3317 North State Street, Jackson, Mississippi 39216.

43.     Defendant Southtec, Inc., is a Mississippi for-profit corporation which may be served at its principal business address of 1936 East Main Street, Tupelo, Mississippi 38804.

44.     Defendant Chase Computer Services, Inc., is a Mississippi for-profit corporation which may be served with process at its principal business address of 398 East Main Street, Tupelo, Mississippi 38804.

45.     Defendant Jacob Black is an adult resident of Madison County, Mississippi, who may be served at his residential address of 134 Mason Way, Madison, MS 39110.

46.    Defendant William Garrigues ("Garrig") Shields is an adult resident of Madison County, Mississippi, who may be served with process at his residential address of 221 Westfield Road, Ridgeland, MS 39157.

47.    Defendant Williams, Weiss, Hester & Company, PLLC is a professional limited liability company organized under the laws of the State of Mississippi, with its principal place of business at 4785 Old Canton Road, Jackson, MS 39211. It may be served with process on its registered Agent, Douglas J. Hester, at its principal place of business.

## II.    JURISDICTION AND VENUE

48.    The Circuit Court of Hinds County has original jurisdiction over this action under Miss. Code Ann. § 9-7-81, and ancillary jurisdiction over all equitable claims, including all claims under the Mississippi Uniform Fraudulent Transfer Act, arising out of the same transaction or occurrence as the principal claim.

49.    All claims asserted in the First Amended Complaint arise out of the same occurrence: the conspiracy to defraud MDHS of TANF funds, as detailed in the paragraphs below.

50.    Venue is proper in the First Judicial District of Hinds County under Miss. Code Ann. § 11-11-3, in that substantial events that caused the injuries claimed occurred in Hinds County, and numerous defendants reside or have their principal places of business in Hinds County.

## III.    LEGAL REQUIREMENTS FOR USE OF TANF FUNDS

51.    In 1996, the United States Congress created the TANF program through the "Personal Responsibility and Work Opportunity Reconciliation Act of 1996," 110 Stat. 2105. The relevant portion of that Act is codified as 42 U.S.C. § 601(a), which authorizes "grants" of TANF funds to States to be used by each State, pursuant to a TANF "State Plan" to be approved by federal authorities, for the purpose of "operating a program designed" to:

10

(1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;

(2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage;

(3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and

(4) encourage the formation and maintenance of two parent families.

42 U.S.C. § 601(a).

52. By statute in Mississippi, "(t)he purpose of the Mississippi Temporary Assistance to Needy Families (TANF) program" is limited to the following purposes, exclusive of all other purposes:

(a) Provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives when such care is beneficial and may be monitored on a random basis by the Department of Human Services or the State Department of Health;

(b) End the dependence of needy families on government benefits by promoting job preparation, work and marriage through, among other things, job placement, job training and job retention;

(c) Prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies;

(d) Encourage the formation and maintenance of two parent families; and

(e) Prevent program fraud and abuse.

Mississippi Code Ann. § 43-17-1(4). That language from that Mississippi statute is referred to in this First Amended Complaint as "lawful TANF purposes."

53. MDHS has periodically issued, and submitted and achieved federal approval of or acquiescence in, TANF State Plans explaining in additional detail how the lawful TANF purposes could be pursued in Mississippi through subgrants and other measures. No TANF State Plan

11

purported to exceed, had any legal authority to exceed, or exceeded, the scope of the lawful TANF purposes set forth in the statutory language quoted in Paragraphs 51 and 52 above.

54.     By Mississippi statute, MDHS only had "authority to formulate state plans consistent with state law as necessary to administer and operate federal grant funds which provide temporary assistance for needy families with minor children under Title IV-A of the federal Social Security Act." Mississippi Code. Ann. § 43-17-1(2).

55.     Under Mississippi statutory law, no expenditure or use of any funds appropriated to pursue lawful TANF purposes could lawfully be expended or distributed except to achieve those lawful TANF purposes.

56.     Under Appendix VI to Part 200 of title 2, Subtitle A, Chapter II of the Code of Federal Regulations, claims made for TANF funds must be based on allowable costs as identified in 2 CFR § 200 *et seq*.

57.     Under 2 CFR § 200.434, costs of contributions and donations, including cash, property, and services, from the non-Federal entity to other entities, are unallowable.

58.     Under 2 CFR § 200.439(b)(3), capital expenditures for improvements to land, buildings, or equipment which materially increase their value or useful life are unallowable as a direct cost except with the prior written approval of the Federal awarding agency, or pass-through entity.

59.     Under 2 CFR § 200.446, lease payments for idle facilities are unallowable.

60.     Under 2 CFR § 200.450, payments for lobbying are generally unallowable.

61.     Under 2 CFR § 200.459, costs for professional and consultant services are only allowable if the service provider is a "member of a particular profession or possess[es] a special skill."

12

62.     Under 2 CFR § 200.319, all procurement transactions for the acquisition of property or services required under a federal award must be conducted in a manner providing full and open competition.

## IV.     FACTUAL ALLEGATIONS

## THE CONSPIRACY TO DEFRAUD MDHS

63.     The Mississippi Department of Human Services is the victim of a far-reaching, multi-million dollar scheme to defraud the agency through the gross misuse of governmental TANF grant funds.

64.     John Davis, who was the Executive Director of MDHS from 2016 to 2019, created a culture of secrecy and fear within the agency to cover his illegal and fraudulent misuse of the public funds entrusted to his authority.

65.     As Executive Director, Davis surrounded himself with famous former male athletes—Ted DiBiase, Sr. (a former wrestler known as the "Million Dollar Man"); his sons, former wrestlers Teddy DiBiase, Jr. and Brett DiBiase; former NFL football players Marcus Dupree and Brett Favre; and former SEC linebacker Paul Lacoste. He fraudulently abused his position at MDHS to ingratiate himself with these former athletes by employing them or arranging to provide them with federal TANF grant funds.

66.     Davis also came to view MDHS as a way to enrich himself and his family (his sister, Twyla Smith; his brother-in-law; Brian Jeff Smith; and his nephew, Austin Smith) by employing them, arranging contracts with MDHS Subgrantees, or directing that federal TANF grant funds be paid to them.

67. Nancy New, her son Zachary New, and her friend Christi Webb understood John Davis's weaknesses and motivations well, and they had their own selfish motivations to enrich themselves and their friends and family.

68. Nancy New and Zachary New controlled Mississippi Community Education Center, Inc. ("MCEC"), and used MCEC as an instrumentality of fraud.

69. Christi Webb controlled Family Resource Center of North Mississippi, Inc. ("FRC"), and used FRC as an instrumentality of fraud.

70. Zachary New, Nancy New, and Christi Webb conspired with John Davis and aided and abetted his fraud by hiring and contracting with his family members, friends, and favorite former athletes under the false pretense that MCEC and FRC would use TANF funds to achieve TANF purposes, when the true purpose was the personal enrichment of the co-conspirators and the enrichment of their families and friends.

71. Nancy New, Zachary New, and Christi Webb did so to obtain millions in TANF grant funds for MCEC and FRC. Their efforts were successful; MCEC and FRC obtained direct TANF Subgrants each year from 2016 to 2019. Those Subgrants to MCEC and FRC directly incorporated and referenced state and federal law governing the proper use of grant funds and, more specifically, TANF funds.

72. Each of MCEC and FRC's TANF Subgrant contracts recited the federal TANF statute, repeated language from the federal and state definitions of legal TANF purposes, and specified that the Subgrantee (MCEC or FRC) was obligated in its administration of TANF funds to comply with all federal Code of Federal Regulations provisions and all MDHS regulations concerning TANF and the expenditure of federal and state funds, and was further obligated to comply with the MDHS Subgrant/Contract Manual.

14

73.     In Subgrant contract language addressing "use of funds" by persons with whom MCEC or FRC entered "second tier" subcontracts for any services with the use of its TANF Subgrant funds, each Subgrant contract obligated MCEC and FRC to require that "the funds obligated under" the Subgrant contracts be "used to support the Contracts/Subcontracts for the provision of only such services authorized under this (TANF Subgrant) Agreement."

74.     Under MCEC's Subgrants, MCEC agreed, "Subgrantee shall comply with the Single Audit Act of 1996, the applicable Office of Management and Budgets (OMB) Circular(s) and the 2016 MDHS Subgrant/Contract Manual. The audit required under the Single Audit Act of 1996 must be performed by an Independent Auditor."

75.     Despite this, John Davis, Nancy New, Zachary New, and Christi Webb tacitly agreed to disregard the legal requirements for the legal and proper uses of TANF grant funds.

76.     John Davis, Nancy New, Zachary New, and Christi Webb agreed for MCEC and FRC to award sham contracts, leases, and second-tier grants to entities that would not and could not provide social services in compliance with lawful TANF purposes.

77.     John Davis, Nancy New, Zachary New, and Christi Webb agreed for MCEC and FRC to disburse full or almost full payments on the sham contracts at or near the beginning of the applicable term, regardless of whether any work had been performed.

78.     John Davis, Zachary New, Nancy New agreed for MCEC to enter into sham leases of idle facilities for the purpose of donating funds for brick-and-mortar construction or renovation.

79.     MCEC provided MDHS with a bogus 2017 "independent" audit by an unqualified auditing firm, Williams, Weiss, Hester & Co., Inc., that concealed MCEC's misuse of TANF funds.

80.     John Davis had no authority to waive state or federal law.  His fraudulent acts were outside the course and scope of his employment, *ultra vires*, illegal, and not binding in any way on

#100657939v13

MDHS under Miss. Code Ann. § 11-46-7, Miss. Code Ann. § 25-1-43, and Miss. Code Ann. § 31-7-57(1).

81.     Each of the transactions listed below were overt acts in furtherance of the overarching conspiracy between John Davis, Nancy New, Zachary New, and Christi Webb to defraud MDHS by purposefully misusing TANF grant funds for unlawful purposes.

### BRETT FAVRE AND THE USM VOLLEYBALL FACILITY

82.     Brett Favre is an alumnus of the University of Southern Mississippi ("USM").  His daughter played volleyball at USM.

83.     In April 2017, Brett Favre made a handshake deal with the USM Athletic Foundation (the "Foundation"), in which he committed to personally guarantee the funds necessary for the brick-and-mortar construction of a volleyball facility. In furtherance of this agreement, Favre contributed $150,000 worth of autographed materials for the Foundation to auction to go toward the construction of the volleyball facility.

84.     Favre solicited his connections from his time as a quarterback for the Green Bay Packers to contribute to the construction of the volleyball facility, and obtained a few donations from the Kohler family and others. Favre, however, was unable to convince his friends and connections to donate enough money to meet his obligation to fund the construction of the volleyball facility, and he did not want to pay the costs out of his own pocket.

85.     Favre met with Nancy New in July 2017 to discuss funding for the volleyball facility. Nancy New sat on the Board of Directors of the Foundation, as did Brett Favre.

86.     On July 24, 2017, Brett Favre, Teddy DiBiase, Nancy New, John Davis, MDHS Deputy Executive Director Garrig Shields, and then-USM Athletic Director Jon Gilbert met to discuss MDHS's funding of the volleyball facility's construction. Jon Gilbert also sat on the Board

of Directors of the Foundation. At this July 24, 2017, meeting, John Davis suggested that MDHS could provide $4 million in funding for the construction of the volleyball facility.

87.     John Davis discussed his plan to "do good things for USM" and "give them 4 mil" with Christi Webb and Nancy New, both of whom enthusiastically agreed.  John Davis suggested that Nancy New tell Jon Gilbert that the facility should be named after Favre.

88.     The Foundation told Brett Favre that they were "very leary [sic] of accepting such a large grant," and suggested "trying to find a way for John [Davis] to allocate money to an entity that could then give to us that would pay for brick and mortar."  Brett Favre also told Nancy New he "passed [this] same info[rmation] to John [Davis] and of course he [John Davis] sent back we will find a way to make it work."

89.     John Davis, the Foundation, Nancy New, and Brett Favre all understood that grant funds provided by MDHS could not be used for brick-and-mortar construction.

90.     Despite the Foundation's expressing worries about "rais[ing] negative concerns" and being "scared to death," Brett Favre urged Nancy New that it was necessary for the  Foundation to "utilize you guys [John Davis and Nancy New] in every way."

91.     The Foundation, Nancy New, Zachary New, and Brett Favre all agreed for John Davis to direct funds to MCEC so that MCEC could provide the funds to the Foundation under the guise of a "sublease" which was in fact intended to finance the brick-and-mortar construction of the volleyball facility.

92.     Jacob Black, then-Deputy Administrator of MDHS, and Garrig Shields, then-Deputy Executive Director of MDHS, provided substantial assistance to the co-conspirators by advising on how to circumvent the TANF prohibition against paying for "brick and mortar" with respect to a proposed palliative care facility at Calvary Baptist Church in Jackson, Mississippi.

17

Although MCEC ultimately did not execute a lease with Calvary Baptist, the proposed lease was a model for the USM Athletic Foundation Sublease.

93.     MCEC already had an existing "lease" with USM for a large suite at the M.M. Roberts Stadium, which allowed access for MCEC to host guests and clients at home football games of USM.

94.     At John Davis's direction, Jacob Black and Garrig Shields met with Assistant USM Athletic Director Daniel Feig, Athletic Director Jon Gilbert, and a group of USM administrators to discuss the "sublease." Black and Shields advised at this meeting that the source of the funds would be TANF funds and that the sublease would be with MCEC because MDHS "can't directly fund a building project."

95.     Black and Shields were both attorneys, although neither was serving as an attorney for MDHS at the time. They both understood the limitations on the use of TANF funds for TANF purposes and the federal regulations governing federal grant funds. Despite this, both encouraged the Foundation to move forward with executing a Sublease with MCEC to be paid with MDHS-provided TANF funds.

96.     Black and Shields were not acting as attorneys for the Foundation, and any reliance the Foundation placed on their advice, without performing its own independent analysis, due diligence, and consultation with its own attorneys, was unreasonable and unjustified.

97.     Leigh Breal, then-President of the Foundation, executed a Sublease of the as-yet-constructed volleyball facility between the USM Athletic Foundation and MCEC.

98.     With the knowledge of the true purpose of the payment (to fulfill Brett Favre's promise to fund the brick-and-mortar construction of the volleyball facility), Christi Webb agreed

18

to transfer some portion of $2,137,436 from FRC to MCEC to pay for the USM Athletic Foundation Sublease.

99.     MCEC paid the $5 million under the Sublease to the Foundation in two installments of $2.5 million on November 6, 2017 and December 5, 2017. Both payments were made with TANF funds.

100.     The volleyball facility was not complete until December 2019, some two years after the full payment of "rent" by MCEC. The Sublease purported to lease access to other USM facilities to MCEC until such time as the volleyball facility was complete, yet MCEC only used a facility once over the five-year lease term.

101.     The final construction costs of the volleyball facility exceeded the initial $5 million construction estimate, in part because of Brett Favre's insistence that construction include a beach volleyball facility adjacent to the indoor volleyball facility.

102.     Because Brett Favre was unwilling to satisfy the difference with his own funds, Favre sought additional grant funds from Nancy New to finance the volleyball facility. Nancy New and Favre agreed for MCEC to make payments on Favre's behalf to the USM Athletic Foundation, in exchange for a vague, illusory promise that Favre make appearances or record PSAs.

103.     Favre knew that this was a sham designed to allow MDHS to cover Favre's commitment to fund construction of the volleyball facility.  Therefore, Favre expressed to Nancy New concern that the media never discover the source of these payments on his behalf.

104.     MCEC paid Favre $1.1 million in TANF grant funds supposedly as compensation for Favre's recording radio advertisements or making speeches or appearances on behalf of MCEC and FRC.  Favre possibly recorded a single twenty-second radio advertisement.

105.    In 2020, Favre received a demand from the Office of State Auditor requiring the $1.1 million be repaid with interest. Recognizing that he had no right to payment for services never performed with funds designed for needy families, Favre repaid the $1.1 million to the State.

106.    Favre has not, however, repaid the $5 million in TANF funds that he orchestrated for MCEC to pay to the Foundation to satisfy his personal guarantee to fund construction of the volleyball facility.

107.    Favre understood that the TANF Funds that MCEC paid to the Foundation were "grant funds" that were paid on his behalf.  Favre knew that John Davis was providing grant funds from MDHS to MCEC for construction of the volleyball facility, and he knew that MDHS is Mississippi's "welfare agency." Favre discussed the source of the funding—MDHS—with Jon Gilbert. And Favre texted Jake VanLandingham regarding Nancy New: "She has strong connections and gave me 5 million for Vball facility via grant money."

108.    Zachary New, a current member of the Board of Directors of the Foundation, has pleaded guilty to defrauding MDHS with respect to payments made under the USM Athletic Foundation Sublease.

109.    Through its directors and agents including Brett Favre, Nancy New, and Jon Gilbert, the Foundation understood that the source of the funding was federal TANF grant funds paid to MDHS.

110.    Through its directors and agents including Brett Favre, Nancy New, and Jon Gilbert, the Foundation understood that there were restrictions on the use of federal TANF grant funds, including a prohibition on the financing of brick and mortar construction.

111.    Through its directors and agents Nancy New and Jon Gilbert, the Foundation knew, or should and would have known if they had exercised reasonable care with respect to the execution

20

of the volleyball facility Sublease, any such use of TANF funds was inconsistent with the pursuit of lawful TANF purposes (or with any other purpose of any grant funds received by MDHS from the United States Government) and was therefore an illegal transaction.

112.    The economic reality and sham nature of the Sublease is further reflected on the Foundation's tax returns, which recorded the payments from MCEC as donations, not lease payments.

### BRETT FAVRE AND THE CONCUSSION DRUG COMPANY, PREVACUS

113.    In late December 2018, Brett Favre was the largest individual outside investor and holder of corporate stock in Prevacus, Inc., a private, for-profit biotechnology corporation in which Favre had individually invested over $250,000.

114.    In December 2018, Prevacus was seeking investors to raise funds to pay for preliminary human trials of the concussion medicine it developed.  Favre was committed to helping raise these funds and solicited professional athletes and celebrities to invest in Prevacus.

115.    In late December 2018, Brett Favre urged Jacob W. ("Jake") VanLandingham, the Chief Executive Officer of Prevacus, to directly solicit Nancy New to use MDHS grant proceeds to invest in Prevacus stock, informing VanLandingham that Nancy New had previously provided him $5 million in grant funds for the volleyball facility.

116.    On January 2, 2019, Favre hosted at his home in Lamar County, Mississippi, a meeting attended by Jake VanLandingham, Nancy New, Zachary New, John Davis, and Ted M. DiBiase, Jr., for a sales pitch, delivered by VanLandingham to the News and Davis, concerning a substantial stock investment in Prevacus.

21

117. All participants in the January 2, 2019 stock sales presentation at Favre's house, including Favre and VanLandingham, knew that John Davis was attending as MDHS Director, and that Nancy New and Zachary New were attending as a grantee of government funds from MDHS.

118. All participants in the January 2, 2019 stock sales presentation at Favre's house knew that governmental grant funds received by New and MCEC would fund any resulting investment in Prevacus.

119. VanLandingham, Prevacus (acting through VanLandingham as its CEO), and Favre agreed with Nancy New, Jesse New, and Zachary New that the three News would spend substantial MDHS grant funds to purchase stock in Prevacus, and later in its corporate affiliate, PreSolMD, Inc. (which, through its CEO VanLandingham, also agreed to investments with government grant funds).

120. As each of those parties knew, or should and would have known if they had exercised reasonable care, use of TANF funds to purchase stock in a private, for-profit company was inconsistent with the pursuit of lawful TANF purposes (or with any other purpose of any grant funds received by MDHS from the United States Government), and was therefore an illegal transaction.

121. Favre, VanLandingham, Prevacus, and PreSolMD, nevertheless agreed to act together, and with Nancy New, Zachary New, and Jesse New, for Nancy New and Zachary New to use TANF grant funds received from MDHS to invest substantial funds in ownership interests in both Prevacus and PreSolMD, in the personal names of Nancy New, Jesse New, Zachary New, and N3 Holdings, to the financial benefit of all six Defendants.

122. As an overt act in pursuit of that agreement, VanLandingham, Prevacus, and PreSolMD caused Nancy New and MCEC to enter a written contract with Prevacus, dated January

22

19, 2019, obligating MCEC to transfer $1.7 million in funds derived from MDHS to Prevacus to provide "development funding" to the for-profit Prevacus.

123. That same Agreement falsely pretended that the $1.7 million investment of MDHS-derived funds in Prevacus was for the purpose of securing "clinical trial sites" to be located within Mississippi to promote an experimental anti-concussion drug being developed by Prevacus.

124. That representation of the purpose for investing $1.7 million of TANF funds into Prevacus and/or PreSolMD, was false. The written Agreement was a sham, as it concealed the material fact that the actual purpose of the transaction was to financially benefit Nancy New, Zach New, Jesse New, Jacob VanLandingham, Brett Favre, Prevacus and PreSolMD. Moreover, neither the purported purpose of the $1.7 million transfer of TANF funds to Prevacus, nor the actual purpose, had any relationship to the pursuit of lawful TANF purposes (as all of the agreeing Defendants knew).

125. Nancy New and Zachary New have pleaded guilty to state crimes related to the fraudulent transfer of TANF funds to Prevacus and/or PreSolMD.

126. In the course of 2019, Nancy New and Zach New caused MCEC to transfer TANF funds to purchase ownership interests in Prevacus and/or PreSolMD, for the financial benefit of Nancy New, Jesse New and Zachary New, and N3 Holdings LLC, in the following amounts, on the following dates:

> a. On January 18, 2019, MCEC transferred $750,000 via bank check to Prevacus;
> b. On April 18, 2019, MCEC transferred $500,000 via electronic wire to Prevacus;
> c. On May 10, 2019, MCEC transferred $250,000 via electronic wire to Prevacus;
> d. On July 16, 2019, MCEC transferred $400,000 via electronic wire to Prevacus;
> e. On September 24, 2019, MCEC transferred $100,000 via electronic wire to PreSolMD; and

      f.    On October 7, 2019, MCEC transferred $100,000 via electronic wire to PreSolMD.

## PAUL LACOSTE AND VICTORY SPORTS FOUNDATION

127.    Lacoste is a former professional football player with the Canadian Football League who began a personal training business after retiring from football. He is also an associate of Teddy DiBiase. Lacoste knew that John Davis was MDHS's Executive Director; that MDHS administers TANF grant funds; and that MDHS, historically Mississippi's "welfare agency," was charged principally with assisting economically disadvantaged and vulnerable children and adults.

128.    Given his relationship with Teddy DiBiase, Lacoste also knew, or should have known, the relationship between MDHS and MCEC, specifically that MDHS directed millions of dollars in TANF grant funds to MCEC under TANF Subgrant contracts.

129.    Using third parties, Lacoste facilitated a meeting with Davis, during which Lacoste proposed to MDHS Executive Director John Davis that Davis steer substantial grant funds to Victory Sports (and thus to Lacoste) in exchange for Lacoste's continuing provision of "fitness camps" to elected officials, their political staffs, and fee-paying participants.

130.    Upon information and belief, Davis directed Lacoste to Zach New and MCEC to discuss an arrangement under which Victory Sports could obtain TANF grant funds through MCEC for services that were not designed specifically to accomplish any TANF purpose.

131.    With the assistance of competent legal counsel, who represented Lacoste for the duration of his relationship with MDHS and MCEC, Lacoste presented a contract to Davis under which Victory Sports would provide fitness boot-camp programs. Provisions in the contract demonstrate Lacoste and his counsel were well aware of the source of funding for the services Lacoste offered, that is, TANF grant funds.

132.    In pertinent part, the contract Lacoste proposed states:

#100657939v13

> MCEC is in the business of implementing, operating, managing and
> overseeing the operation of various grant initiatives throughout the State of
> Mississippi, to include Families First for Mississippi [sic] which operates in
> numerous counties in Mississippi, in addition to providing schools,
> communities and families with educational services and training programs
> on a state-wide basis, along with other associate services (the "Program").

133.    Although a false representation, the contract also stated Victory Sports had "experience in the implementation of Fitness and Nutrition services as part of the Program initiatives".

134.    Under the contract, MCEC agreed to provide to Victory Sports "policy and procedure training", "Program updates and changes", and "[o]versight and evaluation as to the implementation of the Program"; and "[c]onduct Program reviews and audits to ensure that all Program goals are being met." And, Victory Sports agreed to "[i]mplement the Program and its objectives in accordance with MCEC's standards, policies and procedures."

135.    Victory Sports also acknowledged:

> [I]ts Obligations may be amended from time to time and as is necessary by
> MCEC, in MCEC's sole discretion, in order to comply with the goals and
> objectives as provided by the Mississippi Department of Human Services
> ("DHS") as they pertain to the Program.

136.    Davis forwarded Lacoste's proposed contract to Zach New and MCEC, directing Zach to enter into the agreement "ASAP".

137.    Despite the representations in the contract Lacoste proposed to MDHS and MCEC, Lacoste never proposed or intended to provide services designed specifically to accomplish any lawful TANF purpose. Nor did he ever do so in response to the TANF funding he and Victory Sports sought and received.

138.    After entering into that contract with MCEC, upon information and belief, Victory Sports and Lacoste held itself out to the general public as a grant recipient of funds from MDHS,

MCEC, Family First, and/or the federal government. MDHS and MCEC also held Victory Sports and Lacoste out to the general public as a sub-grantee of MCEC.

139.  Victory Sports received in excess of $1,300,000 in TANF grant funds through MCEC. In return for those funds, Victory Sports and Lacoste conducted fitness boot camps, none of which were designed to achieve, or did achieve, any lawful TANF purpose.

140.  Nancy New and Zachary New have both pleaded guilty to the crime of fraudulently transferring $1,200,000 in limited use grant funds to Victory Sports Foundation.

## MARCUS DUPREE AND THE MARCUS DUPREE FOUNDATION

141.  Beginning in August 2017 and continuing through September 2019, FRC and MCEC each paid Marcus Dupree, a former football star, substantial amounts in TANF funds for Dupree to serve as a "celebrity endorser" and "motivational speaker" to promote the "brand" of FRC and MCEC as a combined organization (which they termed "Families First for Mississippi"). MCEC also paid Dupree with TANF funds to "raise money" for MCEC.

142.  Effective on February 20, 2018, MCEC also separately entered into a "Lease Agreement" with the Marcus Dupree Foundation (an entity controlled by Marcus Dupree). Under this "Lease Agreement," MCEC paid a total of $371,000 in TANF funds directly to the Marcus Dupree Foundation, for the benefit of Marcus Dupree. That "lease" contract and those payments totaling $371,000 were not paid in exchange for, and were not valued according to the value of, any services that Marcus Dupree had rendered.

143.  MCEC transferred $171,000 nominally to the Marcus Dupree Foundation to be used as a down-payment by Marcus Dupree to purchase a house in Flora, Mississippi. The house has more than 4,300 square feet of living space, features a swimming pool and "pool pavilion," and is on 15.4 acres of land in a "gated development."

26

144.    In April 2018, Mr. Dupree moved into that house and lives there to this day.

145.    Under its "Lease Agreement," MCEC paid an additional $200,000, at a rate of $9,500 monthly, for MCEC's purported use of the Flora property.

146.    MCEC never made any use of any of the Flora property.

147.    The expenditure of $371,000 to buy Marcus Dupree a house with a swimming pool in Flora is not a lawful TANF purpose.

### THE DIBIASE FAMILY
### (A) Teddy DiBiase, Jr.

148.    In early 2017, John Davis developed a strong personal relationship with Ted ("Teddy") DiBiase, Jr., a retired professional wrestler. Though Teddy DiBiase was neither qualified nor actually employed as an executive staff member of MDHS, Davis assigned him an executive title within MDHS of "Director of Sustainable Change"; gave him a large executive office at MDHS, very near Davis's own large office; assigned him an MDHS administrative assistant; and gave him an MDHS email address.

149.    Beginning in early 2017, John Davis proposed to Nancy New and Christi Webb that MCEC and FRC enrich Teddy DiBiase by paying him millions of dollars in TANF funds. Nancy New, Christi Webb, Amy S. Harris, and Teddy DiBiase all agreed to this, and to the overt acts of implementing that agreement through these transfers.

150.    Teddy DiBiase formed Priceless Ventures LLC on May 11, 2017, solely in order to receive TANF funds for his own enrichment.

151.    Christi Webb, Amy S. Harris, and FRC caused FRC to transfer $250,000 in TANF funds to Teddy DiBiase individually on August 28, 2017. Then-Deputy Executive Director of MDHS Garrig Shields was aware of this transfer and directed FRC to hire Priceless Ventures.

27

152.    Christi Webb, Amy S. Harris, and FRC caused FRC to transfer to Priceless Ventures, LLC $1,497,987, between June 1, 2017 and August 30, 2018. Of the total amount transferred, $497,987 was diverted not from TANF funds, but from separate federal "emergency food assistance funds."

153.    John Davis pleaded guilty in federal court to conspiring to commit wire fraud and theft concerning programs receiving federal funds. The overt acts to which he pleaded guilty included the wire transfer of $497,987 from FRC to Priceless Ventures.

154.    On June 26, 2018, Christi Webb caused FRC to enter an "Agreement" with another entity owned and controlled by Teddy DiBiase, Familiae Orientem LLC.  Pretending that Teddy DiBiase, on behalf of Familiae Orientem LLC, would "address the multiple needs of inner-city youth," that Agreement provided that FRC would "provide the sum of $1,000,000 to FO (Familiae Orientem LLC) for services" during the one-year period following June 26, 2018. Familiae Orientem was created on June 25, 2018, within one day of the signing of that Agreement, solely in order for Teddy DiBiase to receive an additional $1,000,000 in TANF funds. Christi Webb caused FRC to pay to Familiae Orientem $700,000 in TANF funds during the two-month period between June 26, 2018 and August 23, 2018.

155.    John Davis pleaded guilty in federal court to conspiring to commit wire fraud and theft concerning programs receiving federal funds.  The overt acts to which he pleaded guilty included the award of the $1,000,000 contract to Familiae Orientem and the payments of $700,000 in TANF funds to Familiae Orientem.

156.    Nancy New caused MCEC to pay to Priceless Ventures $699,500 in TANF funds between May of 2018 and June of 2019.

28

157. As a part of the false pretext that the TANF fund transfers to Teddy DiBiase were for his actual services, MCEC entered a purported "Services Agreement" with Priceless Ventures, effective October 1, 2018, "to authorize" Teddy DiBiase "to provide Law of 16 personal development and professional leadership training." Such training was not designed to achieve, and did not achieve, any lawful TANF purpose.

158. Neither Teddy DiBiase, nor any other person acting for Priceless Ventures LLC, provided, or was qualified by special skills to provide any services consistent with lawful TANF purposes. Teddy DiBiase, who spent most of his workday hours accompanying John Davis at MDHS offices and on trips, made no substantial effort to supply any contracted for services, either as an individual or through any entity he controlled.

159. MCEC and FRC (directly or indirectly) paid Teddy DiBiase a total of $3,147,478 in federal anti-poverty funds over a two-year period, but Teddy DiBiase did not perform actual anti-poverty services fulfilling any lawful TANF purpose.

160. On multiple occasions in 2018 and 2019, John Davis directed MDHS staff to purchase, at State expense, first-class airline tickets and "premier" rooms at luxury hotels in the name of Teddy DiBiase, so that Teddy DiBiase could accompany John Davis during numerous trips to Washington, D.C. Davis also flew first class on the same flights, and stayed, at State expense, in "premier" rooms at the same luxury hotels.

161. In January 2019, John Davis directed Christi Webb and FRC to donate and transfer $30,000 to the Northeast Mississippi Football Coaches Association ("NEMFCA"), as a reward to the NEMFCA for hiring Teddy DiBiase in 2018 as a banquet speaker for the NEMFCA's 2018 "All-Star Game" banquet held at Northeast Mississippi Community College. FRC treated the

resulting $30,000 contribution as a "sponsorship" of the NEMFCA's May 2019 "All-Star Week" events.

162.   In exchange for $30,000 from FRC, NEMFCA performed no particular service which served, or was intended to serve, any lawful TANF purpose.

163.   TANF funds originating from MDHS funded the $30,000 "sponsorship" contribution by the "non-profit" FRC. NEMFCA knew, or would and should have known if it had exercised reasonable care with respect to the $30,000 transaction, that these funds could only be used, by FRC and by NEMFCA, for lawful TANF purposes.

164.   Teddy DiBiase, Jr. exploited his close relationship with John Davis to further enrich his family and friends, and he pitched his brother, his father, and his friends, Nick Coughlin, Adam Such, and Paul Lacoste, to John Davis.

### (B) Brett DiBiase

165.   Brett DiBiase, brother of Teddy DiBiase, Jr. and son of Ted DiBiase, Sr., was an MDHS employee from March 2017 through September 2017.

166.   John Davis pleaded guilty to fraudulently altering Brett DiBiase's employment application to falsely state that Brett DiBiase had a college degree.  Brett DiBiase was paid $41,597.66 as an employee of MDHS.

167.   John Davis and Brett DiBiase had an even closer relationship than John Davis's relationship with Teddy DiBiase, Jr.  At times, John Davis referred to Brett DiBiase as his "best friend" or "son."

168.   For many months after Brett DiBiase left MDHS employment, John Davis nevertheless included Brett DiBiase on confidential internal MDHS emails.

169.    John Davis, Nancy New, and Brett DiBiase agreed beginning in September 2017 for MCEC to pay Brett DiBiase an annual salary of over $250,000 in TANF funds. MCEC's payments between September 2017 and August 2019 to Brett DiBiase totaled $486,258. MCEC paid this salary to Brett DiBiase during that entire period even though, during a substantial number of months, FRC was also paying Brett DiBiase at a full-time rate, and Brett DiBiase was in full-time treatment for substance abuse in California.

170.    FRC, knowing that MCEC was also simultaneously paying Brett DiBiase a substantial annual salary, paid Brett DiBiase an additional $130,000 in TANF funds on June 26, 2018, purportedly for Brett DiBiase to perform substance abuse training. Garrig Shields, then-Deputy Executive Director of MDHS, was aware of and approved of FRC's contract with Brett DiBiase.

171.    On or about December 12, 2018, John Davis, fully aware that both MCEC and FRC were already paying Brett DiBiase substantial TANF funds, signed an agreement between MDHS and Brett DiBiase's company, Restore2 LLC, to facilitate funneling even more TANF funds to Brett DiBiase. Brett DiBiase formed Restore2 LLC, a Mississippi limited liability company, for the sole purpose of receiving TANF funds.

172.    MDHS paid Restore2 LLC $48,000 between January 2019 and March 2019.

173.    The sham agreement between MDHS and Restore2 LLC was for Brett DiBiase to provide training in avoiding or overcoming substance abuse. John Davis knew that Brett DiBiase was not qualified to provide addiction counseling because Brett DiBiase was not sober and had never been trained to provide substance abuse counseling or training. Brett DiBiase and Restore2 never performed this training, in part because during much of that time, Brett DiBiase was being treated for substance abuse in Malibu, California.

31

174.    John Davis, Nancy New, Christi Webb, and Brett DiBiase knew when they contracted that Brett DiBiase had neither the training, nor the capacity, to perform actual services for lawful TANF purposes. All these Defendants knew when they paid Brett DiBiase TANF funds that he never performed services for any lawful TANF purpose.

175.    Brett DiBiase pleaded guilty to aiding and abetting the defrauding of MDHS under Miss. Code Ann. § 97-7-10 with respect to this $48,000 payment to Restore2 LLC.  John Davis pleaded guilty to conspiring to defraud MDHS under Miss. Code Ann. §§ 97-1-1 and 97-7-10 with respect to the same $48,000 payment.

176.    Beginning in February 2019, when FRC, MCEC, and MDHS each were paying Brett DiBiase substantial TANF funds, John Davis arranged for Brett DiBiase to become a full-time resident of Rise Luxury Rehab, LLC's addiction treatment facility ("Rise in Malibu"), a self-described "Malibu Luxury Drug Rehab" facility with "majestic ocean views" and a "luxury setting" in Malibu, California.

177.    John Davis guaranteed Rise in Malibu representatives that he, then the MDHS Executive Director, would personally assure payment if the facility admitted Brett DiBiase as a rehabilitation patient. Davis thereafter directed MCEC to pay Rise in Malibu a total of $160,000 in TANF funds, through $40,000 payments made on February 11, 2019, March 7, 2019, April 8, 2019, and June 13, 2019.

178.    Rise in Malibu knew that the non-profit MCEC paid its fees to treat Brett DiBiase, at the direction of John Davis.

179.    Davis also directed MCEC to pay for Davis's own expenses in traveling to and from California to meet with Rise in Malibu representatives and to later visit Brett DiBiase on his birthday while he was in treatment in February 2019. Nancy New and MCEC agreed to use TANF

funds to pay for John Davis's first class airline trips to and from Malibu, a luxury hotel suite, and a chauffeured limousine service.

180.    As Rise in Malibu knew, or should and would have known if it had exercised reasonable care with respect to their duties and performance of the treatment contract entered through John Davis with Brett DiBiase, none of Rise in Malibu's $160,000 in treatment fees were for any lawful TANF purpose or use of government grant funds.

181.    John Davis pleaded guilty to conspiracy to commit the crime of embezzlement in violation of Miss. Code Ann. §§ 97-1-1 and 97-23-19 with respect to the funds transferred from MCEC to Rise in Malibu.

### (C) Ted DiBiase, Sr.

182.    At Teddy DiBiase's urging, beginning in May 2017, John Davis authorized MDHS to transfer more than $1.7 million in additional TANF funds to Ted M. DiBiase Sr. (Teddy and Brett's father), through an entity controlled by Ted DiBiase Sr. named Heart of David Ministries, Inc. ("HOD").

183.    The TANF funds diverted to Ted DiBiase Sr. and HOD, between May of 2017 and December of 2019 totaled $1,721,223.49.

184.    The first TANF grant by MDHS to HOD commenced on May 1, 2017; the second TANF grant to HOD commenced on October 1, 2018.

185.    Jacob Black arranged for HOD to apply for and receive the first TANF grant.  He was aware that HOD's original budget proposal called for only $249,988 in TANF funds, but that John Davis unilaterally increased that amount.  Black nonetheless authorized the first TANF grant to HOD on behalf of MDHS.

33

186. Ted DiBiase Sr. and HOD knew that they could only use the TANF funds received to pursue lawful TANF purposes, because their MDHS TANF Subgrant contracts explicitly limited the award of TANF funds to providing "certain services for the benefit of eligible individuals under" the federal TANF statute. After receiving TANF funds under those TANF Subgrant contracts, Ted DiBiase, Sr. and HOD provided no services for lawful TANF purposes.

187. John Davis ordered TANF fund payments to HOD regardless whether HOD used TANF funds to fulfill lawful TANF purposes.

188. Davis continued to authorize TANF fund transfers to HOD even after MDHS examiners documented in a 2018 monitoring review that HOD maintained no personnel files on any employee, and "did not have in place a financial management system that will provide procedures for determining that a cost is allowable and that it may be allocated to an activity (consistent with TANF purposes)."

189. At the demand of Ted DiBiase Sr., Davis ordered MDHS examiners to cease any further efforts to examine activities at HOD.

190. As documented by examiners of the Charities Division of the Mississippi Secretary of State, HOD lacked any meaningful board oversight. Ted DiBiase Sr. was "solely responsible for all aspects of the (purported) charity's finances," and HOD paid for numerous personal expenses apparently incurred by Ted DiBiase Sr., including "multiple flight upgrades," local restaurant meals, debts for a vehicle purchase, and high-dollar but unexplained payments to HOD board members.

191. John Davis ordered an MDHS employee to create HOD's website content at MDHS expense.

192.    The TANF Subgrants required Ted DiBiase Sr. and HOD to submit to MDHS periodic reports of their performance of TANF-related tasks. HOD never submitted any reports of any activities in pursuit of lawful TANF purposes to MDHS.

193.    In August 2017, FRC, Christi Webb, Amy S. Harris, and John Davis agreed with Ted DiBiase, Sr., for FRC to pay Ted DiBiase, Sr. an additional $250,000 lump sum in TANF funds.

194.    FRC purportedly paid Ted DiBiase, Sr. to serve as a "Motivational Speaker," a purpose incompatible with lawful TANF purposes, as all these Defendants knew.

195.    Immediately before Ted DiBiase, Sr. was offered the $250,000 TANF fund payment, he created an entity named DiBiase Development LLC, on July 31, 2017, to receive the $250,000 in TANF funds. DiBiase Development LLC was administratively dissolved in November 2019.

196.    On or about August 28, 2017, FRC issued a $250,000 lump-sum check to Ted DiBiase Sr. (through "DiBiase Development LLC").

197.    Upon receiving this check, Ted DiBiase, Sr. emailed his two sons, Teddy DiBiase, Jr. and Brett DiBiase, and remarked to them: "Look what I got today!"

### THE DIBIASES' FRIENDS
### (A) Adam Such and SBGI, LLC

198.    On or about May 23, 2017, Teddy DiBiase Jr. introduced John Davis to Adam Such, and urged Davis to arrange for Such to get substantial TANF funds without having to compete with other service suppliers. Adam Such had no special skill in performing any lawful TANF purpose.

199.    Davis agreed to implement Teddy DiBiase's proposal, and Davis urged Christi Webb to transfer $250,000 in TANF funds to Such, through an entity that Such owned and controlled, SBGI, LLC.

35

200. Webb agreed to do so and directed FRC to pay $250,000 in TANF funds to Adam Such, through SBGI, LLC, on August 28, 2017, regardless of whether Such or SBGI, LLC would perform any activity implementing lawful TANF purposes.

201. FRC entered into a contract with Such and SBGI, under which Such and SBGI purportedly agreed to provide one year's worth of services beginning on August 1, 2017. Webb and FRC paid Such and SBGI the entire contract amount in a lump sum in the contract's first month.

202. Webb, FRC, Such and SBGI created documents to pretend that Such and SBGI would perform services related to a "Center for Excellence" and a "referral network," but none of these parties expected Such or SBGI to deliver any services of value in exchange for transfer of $250,000 in TANF funds.

203. Neither Adam Such nor SBGI performed any service in pursuit of lawful TANF purposes.

204. The true purpose of the transfer was for John Davis to please Teddy DiBiase, and for Christi Webb to please John Davis, by enriching one of Teddy DiBiase's friends.

### (B) Nick Coughlin and NCC Ventures

205. On August 17, 2017, Brett DiBiase sent John Davis a resume for Nicholas ("Nick") Coughlin, a business associate of Brett DiBiase's brother, Teddy DiBiase.

206. Nick Coughlin is a former reality TV star who appeared on "The Apprentice" and "Expedition Impossible." He and Teddy DiBiase partnered on real estate development deals. Coughlin had no training, experience, or skill in providing services for TANF purposes.

36

207. Davis promptly scheduled a meeting between Davis and Nick Coughlin for August 22, 2017, at which Davis proposed that Coughlin be paid substantial grant funds through MDHS, though Coughlin had no special skill or experience in pursuing any lawful TANF purpose.

208. On September 6, 2017, Coughlin created NCC Ventures LLC solely in order to receive the promised TANF funds.

209. Davis and Webb agreed for FRC to pay TANF funds to Coughlin, and FRC entered into a contract with NCC Ventures to begin on November 1, 2017, under which FRC paid NCC Ventures $49,999.98 in TANF funds.

210. Davis also proposed to Nancy New that MCEC pay TANF funds to Coughlin, and MCEC agreed, paying NCC Ventures $45,833.27 in TANF funds between February 26, 2018 and July 24, 2018.

211. Davis also arranged, with Jacob Black's assistance, for MDHS to pay NCC Ventures (and thus Coughlin) $72,900.00 in TANF funds between April 13, 2018 and September 14, 2018.

212. Coughlin rigged the required MDHS competitive ("request for proposals") process by forwarding to Jacob Black contact information for two out-of-state entities, to which Coughlin urged MDHS to send "requests for proposals" nominally in competition with NCC Ventures LLC, but which Coughlin knew would not submit competitive proposals.

213. Coughlin and Black intentionally manipulated a purportedly competitive proposal process into a sham process for Coughlin to submit the only viable proposal in order for Coughlin to receive the TANF funds.

214. Although Davis, FRC, and MCEC pretended that NCC Ventures and Coughlin were paid with TANF funds to perform vague tasks such as having "conversations with industry

37

leaders," Coughlin and NCC Ventures never engaged in any substantial activity in exchange for $168,735.25 in TANF funds. Nothing they did was for a lawful TANF purpose.

### JOHN DAVIS'S FAMILY MEMBERS
### (A) John Davis's brother-in-law, Brian Jeff Smith

215.    Beginning in the summer of 2018, and continuing through February 2019, John Davis proposed, and Christi Webb, Brian Jeff Smith and Nancy New agreed, for MCEC and FRC to divert TANF funds to enrich Davis's brother-in-law, Brian Jeff Smith. John Davis and Brian Jeff Smith resided at the same address in Brookhaven, Mississippi.

216.    To implement this agreement, Christi Webb, Brian Jeff Smith, John Davis, and Nancy New engaged in numerous false pretexts for transferring money to Brian Jeff Smith, whose sole "qualification" to receive TANF funds was his marriage to John Davis's sister.

217.    In June and July 2018, both Nancy New and Christi Webb pretended that MCEC and FRC would hire Brian Jeff Smith as a "Leadership Outreach Coordinator" for the two entities. Brian Jeff Smith was then paid TANF funds by both MCEC and FRC without regard for whether he was performing any actual services for either organization.

218.    On June 1, 2018, the first day of Smith's pretended employment by MCEC, MCEC paid Smith a lump sum of $150,000, which was the entire amount due under his contract.

219.    FRC, beginning in July of 2018, paid Brian Jeff Smith an additional $93,600, with non-TANF federal funds provided to FRC by MDHS purportedly to support an "Early Childhood Academy," but which was used by Webb and FRC to further enrich Brian Jeff Smith. Those parties agreed that all such checks would be made out to "Transformational Ventures LLC."

220.    Immediately before MCEC and FRC issued these checks, Brian Jeff Smith established Transformational Ventures (solely to receive those TANF funds). Smith dissolved Transformational Ventures on August 19, 2021.

221.    On February 7, 2019, as a pretext for funneling more TANF funds to Brian Jeff Smith, MCEC signed a purported "lease" agreement with JTS Enterprises LLC, an additional entity Brian Jeff Smith owned and created solely to receive those funds.  MCEC immediately transferred $365,050 of TANF funds to Brian Jeff Smith through JTS.

222.    The "lease" was a sham. The building to be "leased," at the location of 117 W. Cherokee Street in Brookhaven, Mississippi, was under construction and was not habitable or otherwise then able to be used, as the parties knew.

223.    JTS Enterprises purchased and renovated at least two properties with MDHS grant funds provided at the behest of John Davis.  Davis discussed with his sister the renovation budgets and the $350,000 estimate to renovate both buildings in Brookhaven.  Shortly thereafter, JTS received the $365,000 TANF funds and executed contracts to renovate both buildings using welfare funds.

224.    John Davis pleaded guilty to receiving a $5,000 bribe from Brian Jeff Smith and a $6,000 bribe from Brian Jeff Smith and Twyla Leigh Smith (Davis's sister) under Miss. Code Ann. § 97-11-53 with respect to the payments transferred from MCEC to JTS Enterprises and Transformational Ventures, which MCEC paid as an inducement to a $7,600,000 increase to MCEC's Subgrant.

### (B) John Davis's nephew, Austin Smith

225.    John Davis proposed, beginning in the fall of 2017 and as a part of the corrupt agreement described above, for MCEC and FRC to transfer TANF funds to Davis's nephew (and Brian Smith's son), Austin G. Smith. Those transactions were under the pretext that Austin Smith would teach "coding" skills which, in fact, Austin Smith did not have (and did not know how to teach).

#100657939v13

226.    At times, Austin Smith resided with Brian Jeff Smith and John Davis at the same address in Brookhaven, Mississippi.

227.    Christi Webb, John Davis, Nancy New, and Austin Smith agreed to those transfers to Austin Smith, and acted on that agreement by causing MCEC and FRC, between October of 2017 and March of 2019, to transfer $426,397 predominantly in TANF funds to Austin Smith under the pretense that he was earning such payments by teaching coding skills to economically needy students (both as an employee and as a consultant, to both MCEC and FRC). He was not.

228.    From the timing and nature of their transfers, MCEC and FRC made it obvious that these transfers were not in exchange for any services actually performed by Austin Smith, or for any services that Austin Smith, then a 24-year-old with no educational background in lawful TANF purposes, was qualified to perform.

229.    Between October 2017 and July 2018, FRC paid Austin Smith as an FRC "employee" $86,127.

230.    On July 16, 2018, while still employing Austin Smith, FRC paid Austin Smith $130,000 purportedly for consulting on coding issues that he knew little or nothing about.

231.    FRC paid that lump sum amount to Austin Smith within one day of contracting with him and without regard to whether any the services had been, or would ever be, provided.

232.    Because Austin Smith lacked the special skills necessary to perform the $130,000 contract with FRC, FRC paid for Austin Smith to attend training courses in New Orleans over the course of six months.

233.    While Smith was in New Orleans for training, John Davis directed that someone create a new company called ABLE Consulting, which was to be an LLC owned by Austin Smith and Brett DiBiase.  ABLE Consulting was formed and filed a certificate of formation with the

40

Secretary of State. John Davis and Garrig Shields drafted a contract between FRC and ABLE Consulting.

234. The contract between ABLE Consulting and FRC was not executed because, according to Austin Smith, he and Brett DiBiase did not get along. Austin Smith contends that Brett DiBiase lied to John Davis about Austin Smith.

235. Austin Smith knew that his uncle, John Davis, had close relationships with Nancy New, Christi Webb, and Brett DiBiase.

236. Austin Smith also knew that John Davis had a company created on Austin Smith's behalf to receive funds from FRC.

237. On February 2, 2019, MCEC contracted with Austin Smith through an entity called ESA Technologies to start work as a coding consultant. MCEC paid Austin Smith an additional lump sum of $139,500 in TANF funds, which was the entire amount due under his MCEC contract, for all future services for the following twelve months. MCEC had previously paid Austin Smith $70,770 as an employee of MCEC purportedly to do the same thing.

238. FRC's payments to Austin Smith both as an employee of FRC and as a consultant to FRC, were made when Christi Webb (and thus FRC) knew that MCEC was also paying Austin Smith with TANF funds both as an employee of and as a consultant to MCEC. Nancy New and Christi Webb both knew Austin Smith was being paid solely to please John Davis and not for any lawful TANF purpose.

239. Austin Smith knew that he had not performed services to earn the $426,397 he received in grant funds. In May 2019, Christi Webb asked Austin Smith via text message whether he was performing coding work and whether he'd been certified to do so. Ostensibly, Smith was under contract with MCEC and FRC at this time to perform this work. Instead of responding to

41

Webb, Smith panicked and called his mother (John Davis's sister), who relayed the message to John Davis.

240.     Austin Smith avoided calling Christi Webb without including John Davis on the call because Austin Smith didn't want to say or do anything that would get himself or John Davis in "trouble."

## MCEC'S OTHER TRANSFEREES
### (A) New Learning Resources

241.     From January 1, 2016 to June 30, 2019, MCEC transferred a total of $6,513,393 to New Learning Resources, Inc., a private entity owned and controlled by Nancy New and Zach New.

242.     New Learning Resources and MCEC's management and finances were comingled and intertwined.

243.     In October 2021, Anne McGrew, former bookkeeper for both entities, admitted that both entities used TANF funds essentially as a line-of-credit to operate all of the various entities the News controlled.  McGrew has pleaded guilty to conspiracy to commit embezzlement, and she has a pending charge of making fraudulent statements that prosecutors have recommended be remanded if McGrew cooperates as a testifying witness.

244.     MCEC credited New Learning Resources with the repayment of funds transferred, the legitimacy of which has not been determined.

245.     Even with the credits for repayments from New Learning Resources to MCEC, the total amount transferred from MCEC and recorded as owed to MCEC from New Learning Resources was $1,085,217 in June 2019. On information and belief, New Learning Resources' debt to MCEC consists of the repayment of TANF funds transferred from MCEC to New Learning Resources.

#100657939v13

246.     In addition, MCEC recorded a transfer of $700,000 in TANF funds to New Learning Resources in November 30, 2018.

247.     MCEC falsified a signed grant agreement to fraudulently misrepresent that the transfer of $700,000 to New Learning Resources was a legitimate distribution of TANF grant funds.

248.     New Learning Resources did not use the $700,000 for lawful TANF purposes.

### (B) Jesse New and Magnolia Strategies

249.     Jesse ("Jess") New is a licensed attorney and the son of Nancy New and the brother of Zachary New.

250.     Jess New formed Magnolia Strategies, LLC for the purpose of receiving TANF funds from MCEC.

251.     Magnolia Strategies, LLC received $250,000 in 2018 and $250,000 in 2019 from MCEC in TANF funds.

252.     In 2017, Jess New was employed as an attorney for a law firm in Jackson, Mississippi. He was paid $250,000 by MCEC through Magnolia Strategies outside of his legal employment.

253.     When MCEC's business manager, Anne McGrew, asked Jess New in 2019 for backup for his 2017 payment of $250,000, he asked her to remind him "what this was please and what all needs to be listed on the invoice." She told him that she needed "some sort of verification that [he] did work for" MCEC.

254.     In response, Jess New created an undated, single-page invoice for "consulting, legal and contractual services rendered for 2017" two years after receiving payment. He produced no other documentation demonstrating that he performed any actual services for MCEC.

43

255.    In response to requests from the Office of the State Auditor, MCEC produced no contracts or other documentation with Magnolia Strategies as support for its payment of $500,000 from 2018 to 2019 to Magnolia Strategies.

256.    Given the lack of documentation supporting any lawful TANF purpose for these payments, upon information and belief, the $500,000 in payments transferred to Magnolia Strategies were unallowable payments made with TANF funds for non-TANF purposes.

257.    Using TANF Funds, MCEC purchased a $54,221 Ford F250 Truck in November 2018 for the personal use and benefit of Jess New.  The direct purchase of this vehicle with grant funds is not allowable under federal regulations and was not for a lawful TANF-purpose.

258.    In 2018, Jess New was hired by the Mississippi Oil & Gas Board as the executive director.  His receipt of fraudulently transferred TANF funds and assets purchased with TANF funds was unrelated to his current employment and was outside the course and scope of his current employment.

### (C) Lobaki Foundation and Lobaki, Inc.

259.    Lobaki Foundation & Lobaki, Inc. (together, "Lobaki") are related virtual reality companies that develop and utilize virtual reality software.  The two companies share management and operate as one.

260.    John Davis became interested in virtual reality and committed to financially supporting Lobaki while he served as Executive Director of MDHS.

261.    On or about August 6, 2018, FRC and MCEC entered into a $635,000 agreement with Lobaki to deploy and operate a virtual reality academy at 750 North State Street in Jackson, Mississippi. This agreement required Lobaki to comply with the provisions of the MDHS

44

Subgrant/Agreement Manual and any other applicable state and federal law. An addendum to the scope of work added $160,000 to Lobaki's contract with MCEC alone.

262. Lobaki asked MCEC and FRC what kind of federal grant was funding the contract, but it received no response. Despite this, Lobaki Foundation agreed to the receipt of grant funds.

263. Providing virtual reality training is not a lawful TANF purpose, particularly in the absence of any determination of the neediness of the participants.

264. Lobaki Foundation and Lobaki, Inc. had two physical locations, both paid for with TANF funds: one at 750 North State Street (the former State Office location for MDHS) and another in the City Centre on 200 S. Lamar Street, both in Jackson, Mississippi.

265. MCEC entered into a lease with Hertz for the renovation of space for a Lobaki showroom within the North Tower of the City Centre buildings located at 200 S. Lamar Street, which was paid for with TANF funds.

266. On April 22, 2022 Nancy New pleaded guilty. One of the counts to which she pleaded guilty was Wire Fraud. Her plea stated that she, in concert with John Davis, participated in a scheme to defraud the State of Mississippi by transferring $365,000 to a Virtual Reality program, despite knowing that the expenditure was an ineligible use of grant funds.

267. Zachary New also pleaded guilty to Wire Fraud. Mr. New's plea states that he, in concert with Nancy New and John Davis, knowingly transferred $500,000 in TANF funds for the construction of a virtual reality center at City Centre in Jackson. Mr. New's plea goes on to state that the conspirators disguised the construction project as a lease as a means of circumventing the prohibition against money going to brick and mortar construction project.

45

### (D) Will Longwitz and Inside Capitol LLC

268.     Inside Capitol is a limited liability company owned and controlled by William Longwitz.

269.     Despite having no written contract, MCEC paid Inside Capitol $14,000 in 2017; $150,325 in 2018; and $154,000 in 2019 for a total of $318,325.

270.     Longwitz executed a memorandum of understanding with both MCEC and FRC, each of which stated his scope of work to include meeting with legislative leaders and helping policy makers understand the value of Family First of Mississippi to achieving the goals of skills training, economic productivity, and social mobility.

271.     In 2018, Nancy New and Christi Webb were specifically advised that TANF regulations prohibit the use of TANF funds for lobbying activity.

272.     Longwitz registered as a lobbyist for MCEC in 2018.

273.     MCEC knowingly paid Inside Capitol and Longwitz for lobbying activity with TANF funds.

274.     Longwitz knew and understood that Inside Capitol was being paid with TANF funds.

### (E) Soul City Hospitality

275.     In February of 2019, MCEC and Defendant Soul City Hospitality LLC entered a "Commercial Sublease Agreement," under which MCEC, acknowledged by the Agreement to be a "charitable nonprofit corporation," purported to be purchasing from Soul City Hospitality LLC, as "Lessor," the legal right, as "Lessee," for MCEC itself to occupy and use property containing enclosed space of 16,229 square feet located at 352 East Woodrow Wilson Boulevard in Jackson, Mississippi.

46

276.    The "Sublease Agreement" specifically represented that MCEC "is hereby agreeing to sublease the Premises to implement a food aggregation and distribution facility and workforce training program."

277.    MCEC "prepaid" to Soul City Hospitality LLC, on or about February 22, 2019, and thus at or near the beginning of the lease term, an amount of $200,000.00, paid by MCEC with TANF funds resulting from MCEC's TANF subgrant from MDHS, the known third-party beneficiary of the Sublease Agreement.

278.    MCEC and Soul City Hospitality LLC through the Sublease Agreement did not disclose, and did fail to disclose (and did thereby conceal) the material fact that MCEC as "Lessee" had no specific plan or capacity to use the very large leased commercial premises for any lawful TANF purpose, including the purported purpose mis-stated on the face of the Sublease Agreement as "workforce training" or "food aggregation and distribution." That fact was known by both parties, or would have been known to both parties if they had both exercised reasonable care with respect to their duties under the Sublease Agreement.

## FRC'S OTHER TRANSFEREES
### (A) SouthTec, Inc.

279.    FRC entered, during September 2018, a service contract with SouthTec, Inc. ("SouthTec"), under which SouthTec promised to install and render operable internet networks and phone systems at numerous locations in North Mississippi at which SouthTec knew FRC purported to have plans to perform services for needy families consistent with TANF purposes. SouthTec in particular knew that the funding source for all such services by FRC was MDHS, and thus that MDHS and its program beneficiaries were the third-party beneficiaries of all such services to be performed by SouthTec for FRC.

47

280.     On or about September 28, 2019, FRC paid SouthTec an amount of $118,935.85 as "prepayment" for the expected services over the following year. FRC's source of that payment was TANF and other federal grant funding FRC had received from MDHS.

281.     SouthTec failed to install the promised communications equipment at FRC offices, by causing unnecessary and unauthorized data usage "overage" charges to FRC (in the amount of approximately $19,000) as a result of SouthTec's own use of a phone line being paid for by FRC, and by refusing to refund payments made by FRC to SouthTec .

### (B) Chase Computer Services, Inc.

282.     MCEC and FRC entered, during April of 2016, a service contract with Chase Computer Services, Inc. ("Chase"), under which Chase promised to develop or provide "an effective software application" to be used by MCEC and FRC to manage its TANF-related programs pursuant to its TANF grant contracts with MDHS, including the entry and management of digital information related to "program effectiveness," "behavior tracking," "class attendance records," and "programmatic services by county."

283.     Chase, in the course of proposing those services to MCEC and FRC, knew that the funding source for all such services was MDHS, and thus that MDHS and its program beneficiaries were ultimately the third-party beneficiaries of all such services to be performed by Chase.

284.     FRC paid Chase $375,750 pursuant to that agreement, and in consideration of Chase's promises to perform those computer software-related services.

285.     Chase failed to provide the agreed software and related computer services.

48

## V.    LEGAL CLAIMS

### COUNT 1: VIOLATIONS OF MISS. CODE ANN. § 31-7-57(1) BY JOHN DAVIS, GARRIG SHIELDS AND JACOB BLACK

286.    Miss. Code Ann. § 31-7-57(1) provides, in relevant part, "Any…executive head, any employee or agent of an agency or governing authority, who appropriates or authorizes the expenditure of any money to an object not authorized by law, shall be liable personally for up to the full amount of the appropriation or expenditure as will fully and completely compensate and repay such public funds for any actual loss caused by such appropriation or expenditure, to be recovered by suit in the name of the governmental entity involved..."

287.    As detailed in Paragraphs 51-278 above, which are incorporated here by reference, John Davis authorized the expenditure of TANF funds to MCEC, FRC, and Heart of David for non-TANF purposes, which were not authorized by law under Mississippi Code Ann. § 43-17-1(4).

288.    John Davis further authorized the hiring of Brett DiBiase despite having fraudulently falsified Brett DiBiase's employment application to MDHS.

289.    John Davis is personally liable for the full amount of each expenditure he authorized for an object not authorized by law.

290.    As detailed in Paragraphs 51-62, 182-197, and 205-214 above, which are incorporated here by reference, Jacob Black authorized the expenditure of TANF funds to NCC and Heart of David for non-TANF purposes, which were not authorized by law under Mississippi Code Ann. § 43-17-1(4).

291.    Jacob Black is personally liable for the full amount of each expenditure he authorized for an object not authorized by law.

292.    As detailed in Paragraphs 51-62 and 148-164 above, which are incorporated here by reference, Garrig Shields authorized the expenditure of TANF funds to Teddy DiBiase and

49

Priceless Ventures for non-TANF purposes, which were not authorized by law under Mississippi Code Ann. § 43-17-1(4).

293.    Garrig Shields is personally liable for the full amount of each expenditure he authorized for an object not authorized by law.

## COUNT 2: DEBTS DUE UNDER MISSISSIPPI CODE ANN. § 43-1-27

294.    Miss. Code Ann. § 43-1-27 provides, "Any sums paid to or on behalf of any person, entity or subgrantee or the value of any aid or benefit or services obtained or received under any state or federally funded assistance program as a result of any false statement, misrepresentation, concealment of a material fact, failure to disclose assets, or by whatever means, becomes a debt due to the state department of public welfare."

295.    MDHS is the state agency formerly known as the state department of public welfare.

296.    TANF is a federally funded assistance program.

297.    As detailed in Paragraph 51-278 above, which are incorporated here by reference, Defendants MCEC, FRC, and Heart of David each made false statements and misrepresentations in each of their respective TANF Subgrant contracts by falsely representing that the TANF funds received would be used for TANF purposes and in accordance with state and federal law.

298.    As detailed in Paragraphs 51-112 above, which are incorporated here by reference, Defendant the USM Athletic Foundation received $5 million in TANF funds as a result of MCEC's false statements regarding its use and distribution of TANF funds and as a result of the sham lease disguised to hide an unallowable donation to finance brick and mortar construction of the USM volleyball facility.  USM Athletic Foundation owes MDHS a debt of $5 million under Miss. Code Ann. § 43-1-27.

299.    As detailed in Paragraphs 51-81 and 113-126 above, which are incorporated here by reference, Defendant Prevacus, Inc. received $1,900,000 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. Prevacus owes MDHS a debt of $1,900,000 under Miss. Code Ann. § 43-1-27.

300.    As detailed in Paragraphs 51-81 and 113-126 above, which are incorporated here by reference, Defendant PreSolMD, LLC received $200,000 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. PreSolMD owes MDHS a debt of $200,000 under Miss. Code Ann. § 43-1-27.

301.    As detailed in Paragraphs 51-81 and 127-140 above, which are incorporated here by reference, Defendants Paul Lacoste and Victory Sports Foundation received $1,309,183 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds.  Lacoste and Victory Sports Foundation owe MDHS a debt of $1,309,183 under Miss. Code Ann. § 43-1-27.

302.    As detailed in Paragraphs 51-81 and 141-147 above, which are incorporated here by reference, Defendants Marcus Dupree and Marcus Dupree Foundation received $371,000 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. The Dupree Defendants owe MDHS a debt of $371,000 under Miss. Code Ann. § 43-1-27.

303.    As detailed in Paragraphs 52-81 and 148-164 above, which are incorporated here by reference, Defendant Teddy DiBiase, Jr., received $250,000 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds. Teddy DiBiase, Jr. owes MDHS a debt of $250,000 under Miss. Code Ann. § 43-1-27.

304.    As detailed in Paragraphs 51-81 and 148-164 above, which are incorporated here by reference, Defendant Priceless Ventures and its sole owner, Teddy DiBiase, Jr., received $1,497,987 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds, and $699,500 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. Priceless Ventures and Teddy DiBiase, Jr. owe MDHS a debt of $2,197,487 under Miss. Code Ann. § 43-1-27.

305.    As detailed in Paragraphs 51-81 and 148-164 above, which are incorporated here by reference, Defendant Familiae Orientem and its owner, Teddy DiBiase, Jr., received $700,000 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds. Familiae Orientem and Teddy DiBiase, Jr. owe MDHS a debt of $700,000 under Miss. Code Ann. § 43-1-27.

306.    As detailed in Paragraphs 51-81 and 161-164 above, which are incorporated here by reference, Defendant NEMFCA received $30,000 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds. NEMFCA owes MDHS a debt of $30,000 under Miss. Code Ann. § 43-1-27.

307.    As detailed in Paragraphs 51-81 and 165-181 above, which are incorporated here by reference, Defendant Brett DiBiase received $616,258 in TANF funds as a result of MCEC's and FRC's false statements regarding MCEC and FRC's use and distribution of TANF funds. Brett DiBiase owes MDHS a debt of $616,258 under Miss. Code Ann. § 43-1-27.

308.    As detailed in Paragraphs 51-81 and 165-181 above, which are incorporated here by reference, Defendant Restore2 LLC and its sole owner, Brett DiBiase, received $48,000 in TANF funds as a result of John Davis's illegal and fraudulent conduct.  Restore2 and Brett DiBiase

52

currently owe MDHS a debt of $43,000 under Miss. Code Ann. § 43-1-27 after Brett DiBiase paid $5,000 in restitution to MDHS.

309.    As detailed in Paragraph 51-81 and 176-181 above, which are incorporated here by reference, Defendant Rise in Malibu received $160,000 in TANF funds as a result of MCEC and John Davis's fraud and MCEC's false statements regarding its use and distribution of TANF funds. Rise in Malibu owes MDHS a debt of $160,000 under Miss. Code Ann. § 43-1-27.

310.    As detailed in Paragraphs 51-81 and 182-197 above, which are incorporated here by reference, Defendant Heart of David Ministries, Inc. and its owner, Ted DiBiase, Sr., received $1,721,223.49 in TANF funds as a result of Ted DiBiase, Sr.'s false statements regarding the use and distribution of TANF funds.  Heart of David Ministries and Ted DiBiase, Sr. owe MDHS a debt of $1,721,223.49 under Miss. Code Ann. § 43-1-27.

311.    As detailed in Paragraphs 51-81 and 182-197 above, which are incorporated here by reference, Defendant Ted DiBiase, Sr. received $250,000 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds. Defendant Ted DiBiase, Sr. owes MDHS a debt of $250,000 under Miss. Code Ann. § 43-1-27.

312.    As detailed in Paragraphs 51-81 and 198-204 above, which are incorporated here by reference, Defendants Adam Such and SBGI, LLC received $250,000 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds. Such and SBGI owe MDHS a debt of $250,000 under Miss. Code Ann. § 43-1-27.

313.    As detailed in Paragraphs 51-81 and 205-214 above, which are incorporated here by reference, Defendants Nicholas Coughlin and NCC Ventures received $168,735.25 in TANF funds as a result of FRC's false statements regarding FRC's use and distribution of TANF funds, MCEC's false statements regarding MCEC's use and distribution of TANF funds, and John Davis's

false statements and illegal conduct in authorizing payment of TANF funds to NCC Ventures for objects not authorized by law. Coughlin and NCC Ventures owe MDHS a debt of $168,735.25 under Miss. Code Ann. § 43-1-27.

314. As detailed in Paragraphs 51-81 and 215-224 above, which are incorporated here by reference, Defendant Brian Jeff Smith received $150,000 in TANF funds as a result of MCEC's false statements regarding its use and distribution of TANF funds. Brian Jeff Smith owes MDHS a debt of $150,000 under Miss. Code Ann. § 43-1-27.

315. As detailed in Paragraphs 51-81 and 215-224 above, which are incorporated here by reference, Defendant JTS Enterprises and its sole owner, Brian Jeff Smith, received $365,050 in TANF funds as a result of MCEC's false statements regarding its use and distribution of TANF funds. JTS Enterprises owes MDHS a debt of $365,050 under Miss. Code Ann. § 43-1-27.

316. As detailed in Paragraphs 51-81 and 225-240 above, which are incorporated here by reference, Defendant Austin Smith received $426,397 in TANF funds as a result of MCEC's and FRC's false statements regarding their use and distribution of TANF funds. Austin Smith owes MDHS a debt of $426,397 under Miss. Code Ann. § 43-1-27.

317. As detailed in Paragraphs 51-81 and 241-248 above, Defendant New Learning Resources received at least $700,000 and as much as $1,785,217 in TANF funds as a result of MCEC's false statements regarding its use and distribution of TANF funds. New Learning Resources owes MDHS a debt of *at least* $700,000 and up to $1,785,217 under Miss. Code Ann. § 43-1-27.

318. As detailed in Paragraphs 51-81 and 249-258, which are incorporated here by reference, Defendants Magnolia Strategies and Jesse New received at least $554,221 in TANF funds as a result of MCEC's false statement regarding its use and distribution of TANF funds.

Magnolia Strategies and Jesse New owe MDHS a debt of at least $554,221 under Miss. Code Ann. § 43-1-27.

319.    As detailed in Paragraphs 51-81 and 259-267 above, which are incorporated here by reference, Defendants Lobaki Foundation and Lobaki, Inc. received the use and benefit of at least $795,000 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. Defendants Lobaki Foundation and Lobaki, Inc. owe MDHS a debt of at least $795,000 under Miss. Code Ann. § 43-1-27.

320.    As detailed in Paragraphs 51-81 and 268-274 above, which are incorporated here by reference, Defendant William Longwitz and Inside Capitol LLC received $318,325 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. Longwitz and Inside Capitol owe MDHS a debt of $318,325 under Miss. Code Ann. § 43-1-27.

321.    As detailed in Paragraphs 51-81 and 275-278 above, which are incorporated here by reference, Defendant Soul City Hospitality received $200,000 in TANF funds as a result of MCEC's false statements regarding MCEC's use and distribution of TANF funds. It owes MDHS a debt of $200,000 under Miss. Code Ann. § 43-1-27.

### COUNT 3: TORTS OF CIVIL CONSPIRACY

322.    As detailed in Paragraphs 51-278 above, which are incorporated here by reference, John Davis and MCEC, through and along with its principals and officers Nancy and Zachary New, agreed to accomplish the unlawful purpose of the expenditure of TANF funds for non-TANF purposes, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of that conspiracy, MCEC took the overt act of transferring TANF funds to Defendants the USM Athletic Foundation; Favre Enterprises; Prevacus; PreSolMD; Marcus Dupree and the Marcus

Dupree Foundation; Victory Sports Foundation;  Priceless Ventures and Teddy DiBiase; Brett DiBiase; Rise in Malibu; Brian Jeff Smith and JTS Enterprises; Austin Smith; New Learning Resources; Magnolia Strategies and Jess New; Lobaki Foundation and Lobaki, Inc.; Will Longwitz and Inside Capitol; and Soul City Hospitality.

323.    As detailed in Paragraphs 51-278 above, which are incorporated here by reference, John Davis and FRC, through and along with its principals, officers, and agents Christi Webb and Amy Harris, agreed to accomplish the unlawful purpose of the expenditure of TANF funds for non-TANF purposes, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of that conspiracy, FRC took the overt act of transferring TANF funds to Defendants MCEC, New Learning Resources, and Nancy New; Teddy DiBiase, Priceless Ventures, and Familiae Orientem; Brett DiBiase; Ted DiBiase, Sr.; Adam Such and SBGI; Nick Coughlin and NCC Ventures; Brian Jeff Smith; and Austin Smith.

324.    As detailed in Paragraphs 51-112 above, which are incorporated here by reference, John Davis, MCEC (through and along with its principals and officers Nancy and Zachary New), FRC (through and along with its principal and officer Christi Webb), Jacob Black, Garrig Shields, Brett Favre, and the USM Athletic Foundation, agreed to accomplish the unlawful and fraudulent purpose of the expenditure of TANF funds for the non-TANF purpose of a disguised donation for the brick-and-mortar construction of a volleyball facility through the execution of a sham lease, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of that conspiracy, FRC took the overt act of transferring some portion of $2,137,436 to MCEC for the payment of the sham lease, and MCEC took the further overt act of transferring $5 million in TANF funds to the USM Athletic Foundation.

325. John Davis, MCEC (through and along with its principals and officers Nancy and Zachary New), FRC (through and along with its principal and officer Christi Webb), Garrig Shields, Jacob Black, Brett Favre, and the USM Athletic Foundation are jointly and severally liable for the damages to MDHS in the amount of $5 million, plus pre- and post-judgment interest, attorneys' fees, and costs.

326. As detailed in Paragraphs 51-81 and 113-126 above, which are incorporated here by reference, John Davis, MCEC (through and along with its principals and officers Nancy New and Zachary New), Brett Favre, Jacob VanLandingham, Prevacus, Inc., PreSolMD, Jesse New, and N3 Holdings LLC agreed to accomplish the unlawful purpose of the expenditure of TANF funds for the non-TANF purpose of providing investor funding in the for-profit enterprise Prevacus, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of that conspiracy, MCEC took the overt acts of transferring $1,900,000 to Prevacus and $200,000 in TANF funds to PreSolMD in exchange for Nancy New, Zachary New, Jesse New, and N3 Holdings LLC's ownership in Prevacus and/or PreSolMD.

327. John Davis, MCEC (through and along with its principals and officers Nancy New and Zachary New), Brett Favre, Jacob VanLandingham, Prevacus, Inc., PreSolMD, Jesse New, and N3 Holdings LLC are jointly and severally liable for $2,100,000, plus pre- and post-judgment interest, attorneys' fees, and costs.

328. As detailed in Paragraphs 51-81 and 141-147 above, which are incorporated here by reference, MCEC (through and along with its principals and officers Nancy New and Zachary New) agreed with Marcus Dupree and the Marcus Dupree Foundation to accomplish the unlawful purpose of expenditure of TANF funds for the non-TANF purpose of financing Marcus Dupree's

personal residence, in violation of Miss. Code Ann. §§ 43-1-27 and 43-17-1. In furtherance of that conspiracy, MCEC took the overt act of transferring $371,000 to the Dupree Defendants.

329.    MCEC (through and along with its principals and officers Nancy New and Zachary New), Marcus Dupree and the Marcus Dupree Foundation are jointly and severally liable for damages to MDHS in the amount of $371,000, plus pre- and post-judgment interest, attorneys' fees, and costs.

330.    As detailed in Paragraphs 51-81 and 148-164 above, which are incorporated here by reference, John Davis, Garrig Shields, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), and Teddy DiBiase, Jr. agreed to accomplish the unlawful, non-TANF purpose of personally enriching and promoting Teddy DiBiase, Jr. through the unlawful transfer of TANF funds to Teddy DiBiase, Jr., Priceless Ventures, LLC, Familiae Orientem, LLC, and NEMFCA for non-TANF purposes, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. FRC took the overt acts of transferring $250,000 to Teddy DiBiase, Jr.; $1,497,987 to Priceless Ventures; and $700,000 in TANF funds to Familiae Orientem. MCEC took the further overt act of transferring $699,500 to Priceless Ventures, and FRC took the further over act of transferring $30,000 to NEMFCA for non-TANF purposes.

331.    John Davis, Garrig Shields, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), and Teddy DiBiase, Jr. are jointly and severally liable for damages to MDHS in the amount of $3,177,487, plus pre- and post-judgment interest, attorneys' fees, and costs.

332.    As detailed in Paragraphs 51-81 and 165-181 above, which are incorporated here by reference, John Davis, MCEC (through and along with its principals and officers Nancy New

and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), and Brett DiBiase agreed to accomplish the unlawful, non-TANF purpose of personally enriching Brett DiBiase through the unlawful transfer of TANF funds to Brett DiBiase, Restore2 LLC, and Rise in Malibu, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1.  MCEC took the overt act of paying Brett DiBiase $486,258 in TANF funds.  FRC took the further overt act of paying Brett DiBiase $130,000 in TANF funds.  John Davis took the further overt act of authorizing $48,000 in payment to Restore2 LLC and of directing MCEC to transfer $160,000 to Rise in Malibu for the in-patient addiction treatment of Brett DiBiase.

333.    John Davis, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), Brett DiBiase, and Restore2 LLC are jointly and severally liable for damages to MDHS in the amount of $824,258, plus pre- and post-judgment interest, attorneys' fees, and costs.

334.    As detailed in Paragraphs 51-81 and 182-197 above, which are incorporated here by reference, John Davis, Teddy DiBiase, Jr., Ted DiBiase, Sr., Heart of David Ministries, Inc., and Jacob Black agreed to the unlawful, non-TANF purpose of personally enriching Ted DiBiase, Sr. through the unlawful transfer of TANF funds to Ted DiBiase, Sr. and Heart of David Ministries, Inc., in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1.  Davis took the overt act of authorizing TANF grants to Heart of David Ministries, Inc. in the amount of $1,721,223.49.

335.    John Davis, Teddy DiBiase, Jr., Ted DiBiase, Sr., Heart of David Ministries, Inc., and Jacob Black are jointly and severally liable for damages to MDHS in the amount of $1,721,223.49, plus pre- and post-judgment interest, attorneys' fees, and costs.

336.    As detailed in Paragraphs 51-81 and 182-197 above, which are incorporated here by reference,  FRC, Christi Webb, Amy S. Harris, and John Davis agreed with Ted DiBiase, Sr.,

59

on behalf of his entity, DiBiase Development LLC, to the unlawful, non-TANF purpose of personally enriching Ted DiBiase, Sr. through the unlawful transfer of TANF funds to DiBiase Development LLC, for non-TANF purposes, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of this conspiracy, FRC took the overt act of transferring DiBiase Development $250,000 in TANF funds.

337.    FRC, Christi Webb, Amy S. Harris, John Davis, and Ted DiBiase Sr., are jointly and severally liable for damages to MDHS in the amount of $250,000, plus pre- and post-judgment interest, attorneys' fees, and costs.

338.    As detailed in Paragraphs 51-81 and 198-204 above, which are incorporated here by reference, John Davis, Teddy DiBiase, Jr., Adam Such, SBGI, LLC, FRC, and Christi Webb agreed to the unlawful, non-TANF purpose of personally enriching Teddy DiBiase's friend, Adam Such, through the unlawful transfer of TANF funds to SBGI, LLC, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of this conspiracy, FRC took the overt act of transferring SBGI, LLC $250,000 in TANF funds.

339.    John Davis, Teddy DiBiase, Jr., Adam Such, SBGI, LLC, FRC, and Christi Webb are jointly and severally liable for damages to MDHS in the amount of $250,000, plus pre- and post-judgment interest, attorneys' fees, and costs.

340.    As detailed in Paragraphs 51-81 and 205-214 above, which are incorporated here by reference, John Davis, Teddy DiBiase, Jr., Nicholas Coughlin, NCC Ventures, Jacob Black, MCEC, Nancy New, FRC, and Christi Webb agreed to the unlawful, non-TANF purpose of personally enriching Nicholas Coughlin through the unlawful transfer of TANF funds to NCC Ventures LLC, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of this conspiracy, FRC took the overt act of paying NCC Ventures $49,999.98 in

TANF funds.  MCEC took the further over act of paying NCC Ventures $45,833.27 in TANF funds.  MDHS took the further over act of paying NCC Ventures $72,900 in TANF funds.

341.    John Davis, Teddy DiBiase, Jr., Nicholas Coughlin, NCC Ventures, Jacob Black, MCEC, Nancy New, FRC, and Christi Webb are jointly and severally liable for damages to MDHS in the amount of $168,735.25, plus pre- and post-judgment interest, attorneys' fees, and costs.

342.    As detailed in Paragraphs 51-81 and 215-224 above, which are incorporated here by reference, John Davis, Brian Jeff Smith, Christi Webb, FRC, MCEC, Nancy New, and JTS Enterprises agreed to the unlawful, non-TANF purpose of personally enriching Brian Jeff Smith through the unlawful transfer of grant funds to Brian Jeff Smith, Transformational Ventures, LLC, and JTS Enterprises LLC, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1 and federal regulations. In furtherance of this conspiracy, the following overt acts were taken: MCEC paid Smith $150,000; FRC paid Smith $93,600; and MCEC entered into a sham lease with JTS Enterprises LLC of a building under construction for $365,050.

343.    John Davis, Brian Jeff Smith, Christi Webb, FRC, MCEC, Nancy New, and JTS Enterprises are jointly and severally liable for damages to MDHS in the amount of $608,650, plus pre- and post-judgment interest, attorneys' fees, and costs.

344.    As detailed in Paragraphs 51-81 and 225-240 above, which are incorporated here by reference, John Davis, Austin Smith, Christi Webb, FRC, MCEC, and Nancy New agreed for FRC and MCEC to transfer Austin Smith $426,397, as both a consultant and an employee of both FRC and MCEC, for non-TANF purposes, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. FRC and MCEC took overt acts in transferring funds to Austin Smith pursuant to sham contracts.

345.     John Davis, Austin Smith, Christi Webb, FRC, MCEC, and Nancy New are jointly and severally liable for damages to MDHS in the amount of $426,397, plus pre- and post-judgment interest, attorneys' fees, and costs.

346.     As detailed in Paragraphs 51-81 and 241-248 above, which are incorporated here by reference, Nancy New and Zachary New agreed for MCEC to transfer New Learning Resources at least $700,000 and up to $1,785,217 for no lawful TANF purpose, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1.  Both took overt acts in furtherance of the conspiracy by transferring over $700,000 to New Learning Resources.

347.     Zachary New and Nancy New are jointly and severally liable for damages to MDHS in the amount of at least $700,000 and up to $1,785,217, plus pre- and post-judgment interest, attorneys' fees, and costs.

348.     As detailed in Paragraphs 51-81 and 249-258 above, which are incorporated here by reference, Nancy New and Jesse New agreed for MCEC to transfer Magnolia Strategies at least $500,000 for Jesse New's sole benefit and for no lawful TANF purpose, and for MCEC to purchase a truck for Jesse New's personal use and for no lawful TANF purpose, in violation of Miss. Code Ann. §§§ 31-7-57(1), 43-1-27, and 43-17-1. In furtherance of this conspiracy, Nancy New had MCEC transfer Jesse New $250,000 in 2018 and 2019.

349.     Jesse New and Nancy New are jointly and severally liable for damages to MDHS in the amount of $554,221, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT 4:  AIDING AND ABETTING FRAUD AND STATUTORY VIOLATIONS

350.     MDHS incorporates by reference all of the preceding paragraphs of this First Amended Complaint.

351.     Jacob Black knew that John Davis's conduct in directing payments of TANF funds to Heart of David and NCC Ventures for non-TANF purposes constituted a breach of John Davis's

statutory and fiduciary duties as a public servant entrusted with the authority to distribute public funds.

352. Jacob Black provided substantial assistance to John Davis in defrauding MDHS through transferring TANF funds to Heart of David and NCC Ventures for non-TANF purposes. Black did so by authorizing the TANF Subgrants to Heart of David, ensuring that Heart of David received those funds, and assisting with NCC Ventures' manipulation of the competitive process.

353. Jacob Black knew that John Davis's and MCEC's conduct in transferring TANF funds to the USM Athletic Foundation for non-TANF, unallowable purposes constituted a breach of John Davis's statutory and fiduciary duties as a public servant entrusted with the authority to distribute public funds and of MCEC's contractual duties to expend TANF funds for TANF purposes and in accordance with state and federal law.

354. Black provided substantial assistance to John Davis, Nancy New, Zachary New, and MCEC by providing the template for the sham USM Athletic Foundation Sublease as a means of fraudulently disguising the true nature of the payments made to the USM Athletic Foundation.

355. Black is jointly and severally liable for the damages caused to MDHS through his aiding and abetting the wrongful and fraudulent transfer of funds to Heart of David, NCC Ventures, and the USM Athletic Foundation, in a total amount of $6,889,958.74, plus pre- and post-judgment interest, costs, and attorneys' fees.

356. Black's conduct in aiding and abetting fraud was outside the course and scope of his employment as a matter of law under Miss. Code Ann. § 11-46-7(2).

357. Garrig Shields knew that John Davis's conduct in directing payments of TANF funds to Teddy DiBiase, Jr. and Priceless Ventures for non-TANF purposes constituted a breach

of John Davis's statutory and fiduciary duties as a public servant entrusted with the authority to distribute public funds.

358.    Garrig Shields provided substantial assistance to John Davis in defrauding MDHS through transferring TANF funds to Teddy DiBiase, Jr. and Priceless Ventures for non-TANF purposes. Shields did so by directing FRC to contract with Priceless Ventures.

359.    Garrig Shields knew that John Davis's and MCEC's conduct in transferring TANF funds to the USM Athletic Foundation for non-TANF, unallowable purposes constituted a breach of John Davis's statutory and fiduciary duties as a public servant entrusted with the authority to distribute public funds and of MCEC's contractual duties to expend TANF funds for TANF purposes and in accordance with state and federal law.

360.    Shields provided substantial assistance to John Davis, Nancy New, Zachary New, and MCEC by meeting with the USM Athletic Foundation to discuss execution of the Sublease.

361.    Shields is jointly and severally liable for the damages caused to MDHS through his aiding and abetting the wrongful and fraudulent transfer of funds to Teddy DiBiase, Priceless Ventures, and the USM Athletic Foundation, in a total amount of $6,747,987, plus pre- and post-judgment interest, costs, and attorneys' fees.

362.    Shield's conduct in aiding and abetting John Davis's and Zachary New's admitted fraud was outside the course and scope of his employment as a matter of law under Miss. Code Ann. § 11-46-7(2).

363.    Williams Weiss Hester knew that MCEC owed MDHS a contractual and statutory duty to use and distribute the governmental TANF grant funds in accordance with state and federal law.

64

364. Williams Weiss Hester knew that MDHS was a foreseeable user of its audits of MCEC.

365. Williams Weiss Hester provided substantial assistance to MCEC in violating Miss. Code Ann. § 43-1-27 by performing "independent" audits that concealed the extent of MCEC's misuse of TANF funds.

366. Williams Weiss Hester is jointly and severally liable with MCEC for damages caused to MDHS and debts owed to MDHS through MCEC's illegal transfers of TANF funds for non-TANF purposes, in an amount to be proven at trial.

## COUNT 5: MISSISSIPPI UNIFORM FRAUDULENT TRANSFER ACT

367. MDHS incorporates by reference all the preceding paragraphs of this First Amended Complaint.

368. MDHS has claims against MCEC for breach of contract, conspiracy to defraud, and debts owed under Miss. Code Ann. § 43-1-27.

369. Because MDHS has claims against MCEC, it is a creditor of MCEC under Miss. Code Ann. § 15-3-101, and MCEC is MDHS's debtor.

370. MCEC acted, through its principals and officers Nancy New and Zachary New, with an admitted actual intent to defraud MDHS in transferring TANF funds to the USM Athletic Foundation. As a result, the $5 million transfer from MCEC to the USM Athletic Foundation is voidable under Miss. Code Ann. § 15-3-111(1)(a). As MCEC's first transferee, the USM Athletic Foundation is liable under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $5 million transferred. Brett Favre is liable for judgment for the value of the $5 million transferred under Miss. Code Ann. § 15-3-113(2)(a) as the person for whose benefit the transfer was made.

65

371.   MCEC acted, through its principals Nancy New and Zachary New, with an admitted actual intent to defraud MDHS in transferring TANF funds to Prevacus and PresolMD. As a result, the $2,100,000 total in transfers from MCEC to Prevacus and PresolMD is voidable under Miss. Code Ann. § 15-3-111(1)(a). Under Miss. Code Ann. § 15-3-111(1)(a), Prevacus and PresolMD are liable for judgment for the $2,100,000 transferred.

372.   MCEC acted, through its principals Nancy New and Zachary New, with an admitted actual intent to defraud MDHS in transferring TANF funds to Victory Sports Foundation. As a result, the $1,309,183 transfer from MCEC to Victory Sports Foundation is voidable. As MCEC's first transferee of the $1,309,183, Victory Sports Foundation is liable under Miss. Code Ann. § 15-3-113(2)(a) for judgment for the value of the $1,309,183 transferred. To the extent Victory Sports Foundation transferred any of those funds to Paul Lacoste, Lacoste is liable as a subsequent transferee.

373.   MCEC acted, through its principals and officers Nancy New and Zachary New, with an actual intent to defraud MDHS in transferring TANF funds to Marcus Dupree and the Marcus Dupree Foundation. MCEC transferred $371,000 to Marcus Dupree and the Marcus Dupree Foundation under a purported Lease Agreement. MCEC designed the Lease Agreement to conceal the true nature of the payments, which were for the personal enrichment of Marcus Dupree. The value of the consideration MCEC received for the Lease Agreement was not reasonably equivalent to the value of the amount of the obligation incurred. As a result of MCEC's fraudulent transfer of $371,000, the Lease Agreement is voidable Miss. Code Ann. § 15-3-111(1)(a). As MCEC's first transferee of the $371,000, Marcus Dupree and the Marcus Dupree Foundation are liable for the value of the asset transferred, $371,000, under Miss. Code Ann. § 15-3-113(2)(a).

66

374. MDHS has claims against John Davis for damages for conspiracy to defraud and for his violations of Miss. Code Ann. §§ 31-7-57(1) and 43-1-27. Because MDHS has claims against John Davis, MDHS is a creditor of John Davis, and John Davis is MDHS's debtor under Miss. Code Ann. § 15-3-101. John Davis acted with an admitted actual intent to defraud MDHS in directing the transfer of $1,000,000 in TANF funds from FRC to Familiae Orientem.

375. As John Davis's co-conspirator, FRC shared the same actual fraudulent intent as John Davis had. MDHS has claims against FRC for breach of contract, conspiracy to defraud, and debts owed under Miss. Code Ann. § 43-1-27, and it is likewise MDHS's debtor.

376. As a result, the $700,000 in transfers from FRC to Familiae Orientem are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Familiae Orientem and Teddy DiBiase, Jr. are liable under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $700,000 transferred.

377. John Davis acted with an admitted actual intent to defraud MDHS in directing the transfer of $497,987 in TANF funds from FRC to Priceless Ventures. As John Davis's co-conspirator, FRC shared that actual fraudulent intent. As a result, the $497,987 transfer from FRC to Priceless Ventures is voidable under Miss. Code Ann. § 15-3-111(1)(a), and Priceless Ventures and Teddy DiBiase, Jr. are liable under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $497,987 transferred.

378. MDHS has claims against FRC, and FRC is MDHS's debtor. FRC acted with an actual intent to defraud MDHS in transferring $30,000 in TANF funds to NEMFCA for no lawful TANF purpose. FRC received nothing of any value in exchange for the transfer; the transfer was made solely to curry favor with John Davis by promoting Teddy DiBiase, Jr., at the expense of accomplishing lawful TANF purposes with the funds.

67

379.    As a result of FRC's actual intent to defraud MDHS with respect to the transfer, the $30,000 transfer to NEMFCA is voidable under Miss. Code Ann. § 15-3-111(1)(a), and NEMFCA is liable under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $30,0000 transferred.

380.    MCEC acted with an actual intent to defraud MDHS in paying Brett DiBiase a salary of $486,258 with TANF funds, despite his performing no services of any value, and no services related to any lawful TANF purpose.

381.    FRC acted with an actual intent to defraud MDHS in paying Brett DiBiase a lump sum payment of $130,000 with TANF funds, despite his performing no services of any value or related to any lawful TANF purpose.

382.    MCEC and FRC's transfers to Brett DiBiase are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Brett DiBiase is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $616,258 transferred to him.

383.    Brett DiBiase acted with admitted actual fraudulent intent in submitting false invoices of $48,000 to MDHS for his company, Restore2 LLC, for services never performed. MDHS has a claim against Brett DiBiase and Restore2 LLC for this amount and is therefore the creditor of Brett DiBiase and Restore2 LLC. The transfer of $48,000 in TANF funds from MDHS to Restore2 LLC is voidable under Miss. Code Ann. § 15-3-111(1)(a), and Brett DiBiase and Restore2 LLC are liable for the same, subject to setoff of $5,000 for restitution paid by Brett DiBiase to MDHS under Miss. Code Ann. § 99-37-17.

384.    MCEC, acting through its principal and officer Nancy New, acted with admitted actual intent to defraud MDHS in transferring $160,000 to Rise in Malibu for the non-TANF purpose of in-patient treatment of Brett DiBiase. MCEC's transfers to Rise in Malibu are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Rise in Malibu is liable to MDHS under Miss. Code

Ann. § 15-3-113(2)(a) for the value of the $160,0000 transferred. Brett DiBiase is liable to MDHS for judgment for the value of the $160,000 transferred under Miss. Code Ann. § 15-3-113(2)(a) as the person for whose benefit the transfer was made.

385. John Davis and Jacob Black acted with actual intent to defraud MDHS in authorizing the transfer of $1,721,223.49 in TANF funds to Heart of David Ministries, Inc. for non-TANF purposes, namely the personal enrichment of Davis's favorite family of wrestlers. The transfer of $1,721,223.49 in TANF funds from MDHS to Heart of David Ministries, Inc. is voidable under Miss. Code Ann. § 15-3-111(1)(a), and Heart of David Ministries, Inc. is liable for the same. To the extent Heart of David Ministries transferred some or all of these funds to Ted DiBiase, Sr., Teddy DiBiase, Jr., and/or Brett DiBiase, those transferees are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the amount transferred.

386. FRC acted with the actual intent to defraud MDHS in transferring a lump sum payment of $250,000 in TANF funds to DiBiase Development, LLC for the benefit of Ted DiBiase, Sr. MCEC's transfers to DiBiase Development are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Ted DiBiase, Sr. is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $250,000 transferred.

387. FRC acted with the actual intent to defraud MDHS in transferring payment of $250,000 in TANF funds to SBGI, LLC for the benefit of Adam Such. FRC's transfers to are voidable under Miss. Code Ann. § 15-3-111(1)(a), and SBGI and Such are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $250,000 transferred.

388. FRC, MCEC, and Davis each acted with the actual intent to defraud MDHS in transferring payment of $168,735.25 in TANF funds to NCC Ventures for the benefit of Nick Coughlin. FRC's, MCEC's, and Davis's transfers to NCC Ventures are voidable under Miss. Code

Ann. § 15-3-111(1)(a), and NCC Ventures and Nick Coughlin are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $168,735.25 transferred.

389.    FRC and MCEC each acted with the actual intent to defraud MDHS in transferring a total of $243,600 to Brian Jeff Smith for the sole purpose of currying favor and carrying out the conspiracy with John Davis, and not in exchange for any services of value consistent with any TANF purpose. FRC's and MCEC's transfers to Brian Jeff Smith are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Brian Jeff Smith is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $243,600 transferred.

390.    MCEC acted with the actual intent to defraud MDHS in transferring $365,000 to JTS Enterprises for the benefit of Brian Jeff Smith for the sole purpose of currying favor and carrying out the conspiracy with John Davis, and not in exchange for any value consistent with any TANF purpose. MCEC's transfers to JTS Enterprises are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Brian Jeff Smith and JTS Enterprises are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $365,000 transferred.

391.    FRC and MCEC each acted with an actual intent to defraud MDHS in transferring a total of $426,397 to Austin Smith for the sole purpose of currying favor and carrying out the conspiracy with John Davis, and not in exchange for any value consistent with any TANF purpose. FRC and MCEC's transfers to Austin Smith are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Austin Smith is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $426,397 transferred.

392.    MCEC acted with an actual intent to defraud MDHS in transferring at least $500,000 to Magnolia Strategies, LLC for the benefit of Jess New.  These transfers were not for value, were made to an insider of MCEC, and were made when MCEC lacked sufficient private,

nongovernmental revenue to pay its debts as they came due. MCEC's transfers to Magnolia Strategies are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Magnolia Strategies and Jess New are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the $500,000 transferred.

393.    MCEC acted with an actual intent to defraud MDHS in transferring the possession, custody, and control of a $54,221 F-150 Ford Truck, purchased with TANF funds, to Jess New, an insider of MCEC. The transfer was not for value, was made to an insider of MCEC, and was made when MCEC lacked sufficient private, nongovernmental revenue to pay its debts as they came due, and is voidable under Miss. Code Ann. § 15-3-111(1)(a), and Jess New is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the asset transferred.

394.    MCEC transferred at least $700,000 and up to $1,785,217 in TANF funds to New Learning Resources with an actual intent to defraud MDHS. These transfers were not for value, were made to an insider of MCEC, and were made when MCEC lacked sufficient private, nongovernmental revenue to pay its debts as they came due. The transfers are voidable under Miss. Code Ann. § 15-3-111(1)(a), and New Learning is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of funds transferred.

395.    MCEC transferred at least $795,000 in TANF funds for the benefit of Lobaki Foundation and Lobaki, Inc. with an actual intent to defraud MDHS. These transfers were not for value consistent with any TANF purpose. The transfers are voidable under Miss. Code Ann. § 15-3-111(1)(a), and Lobaki Foundation and Lobaki, Inc. are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the assets transferred.

396.    MCEC transferred at least $318,325 to Inside Capitol for the use and benefit of Will Longwitz with an actual intent to defraud MDHS. The transfers are voidable under Miss. Code

Ann. § 15-3-111(1)(a), and Longwitz and Inside Capitol are liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the assets transferred.

397. MCEC transferred at least $200,000 to Soul City Hospitality with an actual intent to defraud MDHS. The transfer is voidable under Miss. Code Ann. § 15-3-111(1)(a), and Soul City Hospitality is liable to MDHS under Miss. Code Ann. § 15-3-113(2)(a) for the value of the assets transferred.

## COUNT 6: NEGLIGENCE AGAINST TANF FUND RECIPIENTS

398. MDHS incorporates by reference all the preceding paragraphs of this First Amended Complaint.

399. Defendants the USM Athletic Foundation; Favre Enterprises; Jacob VanLandingham, Prevacus, and PreSolMD; Marcus Dupree and the Marcus Dupree Foundation; Victory Sports Foundation and Paul Lacoste; Priceless Ventures and Teddy DiBiase; Brett DiBiase; Rise in Malibu; Brian Jeff Smith and JTS Enterprises; Austin Smith; New Learning Resources; Magnolia Strategies and Jess New; Lobaki Foundation and Lobaki, Inc.; Will Longwitz and Inside Capitol; and Soul City Hospitality each knew when each contractually agreed to the transfer of funds by MCEC that the source of the funds each received was not from the personal wealth of Nancy New, Zachary New, or any other private person or entity.

400. Defendants Teddy DiBiase, Priceless Ventures, and Familiae Orientem; Brett DiBiase; Ted DiBiase, Sr.; Adam Such and SBGI; Nick Coughlin and NCC Ventures; Brian Jeff Smith; and Austin Smith each knew, when each contractually agreed to accept funds from FRC that the source of the funds received was not from the personal wealth of Christi Webb or any other private person or entity.

72

401.    Each of the recipients of TANF funds from MCEC and/or FRC listed in Paragraphs 399 and 400 knew that the source of funds dispensed by MCEC was indirectly MDHS, and that MDHS was a State government agency not authorized to donate public funds for the private enrichment of wealthy individuals or for-profit organizations.

402.    Each of the recipients of TANF funds from MCEC and/or FRC listed in Paragraphs 399 and 400 owed an affirmative duty under the common law of Mississippi to exercise reasonable care with respect to all material aspects of their contractual performance, including a duty to affirmatively inquire into what statutes and regulations governed their performance of any such service contract.

403.    Each of the recipients of TANF funds from MCEC and/or FRC listed in Paragraphs 399 and 400 knew or should have known in the exercise of reasonable care in the performance of their contractual obligations to MCEC and/or FRC, that the ultimate or original source of funds received by them was the United States Government, acting through MDHS as grantee, and that such a federal source inherently and foreseeably carried with it some federal restrictions on the private use of such funds.

404.    Marcus Dupree and the Marcus Dupree Foundation; Paul Lacoste and Victory Sports Foundation; Teddy DiBiase, Priceless Ventures, and Familiae Orientem; Brett DiBiase and Restore2; Ted DiBiase, Sr. and Heart of David Ministries; Brian Jeff Smith; Austin Smith; Adam Such and SBGI; Nick Coughlin and NCC Ventures; and Jess New and Magnolia Strategies knew or should have known, had they exercised reasonable care in the performance of their contractual obligations, that only persons with a special skill in relation to lawful TANF purposes could be properly engaged as consultants or contractors and paid with TANF funds, and that each lacked

73

such special skills and that each received payments that were unreasonable in relation to the services rendered (or lack thereof).

405. Each of the Defendants listed in the preceding paragraph knew or should have known, had they exercised reasonable care in the performance of their contractual obligations, that federal and State law required that TANF funds be distributed through a competitive decision-making process, but that none engaged in any such process (and, in the case of Nick Coughlin and NCC Ventures, purposely subverted a competitive process).

406. The USM Athletic Foundation; Brian Jeff Smith and JTS Enterprises; Marcus Dupree and the Marcus Dupree Foundation; Lobaki Foundation and Lobaki, Inc.; and Soul City Hospitality knew or should have known, through the use of reasonable care in the performance of their contracts, that use of TANF funds for brick-and-mortar construction or for the lease of idle facilities was not allowed under federal regulations.

407. The USM Athletic Foundation knew or should have known that TANF funds could not be given as a donation or gift under federal regulations.

408. Will Longwitz and Inside Capitol knew that TANF funds could not be used for lobbying services.

409. Each recipient of TANF funds from MCEC, FRC, or MDHS listed in paragraphs 399 and 400 knew or should have known in the exercise of reasonable care in the performance of their contractual obligations that the federal funds distributed to them could only be spent for lawful TANF purposes and could not be lawfully transferred to any person or entity solely for their private financial enrichment.

410. Each recipient of TANF funds listed in paragraphs 399 and 400 breached each's respective duty to exercise reasonable care in the performance the contracts paid with TANF funds

#100657939v13

entered into by each recipient or by an entity within a recipient's control, by failing to exercise reasonable care, including a failure to exercise reasonable or ordinary care in inquiring into and obeying statutory or regulatory obligations which governed the performance of their contracts with MCEC and/or FRC (and the terms of which were inherently implied into all such contracts), or which otherwise governed the use of TANF funds consistent with lawful TANF purposes.

411.   Each recipient of TANF funds listed in Paragraphs 399 and 400 is liable to MDHS for the damages caused by their negligence, in an amount to be proven at trial.

## COUNT 7:  PROFESSIONAL NEGLIGENCE OF WILLIAMS, WEISS, HESTER & CO.

412.   Williams, Weiss, Hester & Co. ("WWH") owed a duty to all reasonably foreseeable users of its independent audits of MCEC to conduct those audits in a manner consistent with the standard of care for a professional accounting firm performing independent audits of federal and state grant fund recipients.

413.   WWH was aware that a condition of MCEC's TANF Subgrants was for it to have independent audits prepared for submission to MDHS. MDHS was therefore a reasonably foreseeable user of WWH's independent audits of MCEC.

414.   In breach of its duty of care, WWH's independent audits of MCEC failed to disclose MCEC's misuse of TANF grants' funds, and MCEC's failure to adhere to federal and state regulations governing sufficient documentation supporting its spending of TANF grant funds.

415.   MDHS reasonably relied upon WWH's independent audits to its detriment. WWH's audits concealed MCEC's misuse of TANF and enabled MCEC to continue to obtain TANF Subgrants.

416.   WWH's breach of its duty to MDHS was a substantial contributing cause of MDHS's damages.

75

417.    MDHS was damaged by WWH's negligence, in an amount to be proven at trial.

## COUNT 8: BREACH OF TANF SUBGRANTS BY MCEC, FRC, AND HEART OF DAVID

418.    MDHS incorporates by reference all preceding paragraphs of the First Amended Complaint.

419.    Each of MCEC, FRC, and Heart of David's respective TANF Subgrant contracts recited the federal TANF statute, repeated language from the federal and state definitions of legal TANF purposes, and specified that the Subgrantee (MCEC or FRC) was obligated in its administration of TANF funds to comply with all federal Code of Federal Regulations provisions and all MDHS regulations concerning TANF and the expenditure of federal and state funds, and was further obligated to comply with the MDHS Subgrant/Contract Manual.

420.    In Subgrant contract language addressing "use of funds" by persons with whom MCEC entered "second tier" subcontracts for any services with the use of its TANF Subgrant funds, each MCEC/MDHS Subgrant contract obligated MCEC to require that "the funds obligated under" the Subgrant contracts be "used to support the Contracts/Subcontracts for the provision of only such services authorized under this (TANF Subgrant) Agreement."

421.    MCEC and FRC breached their Subgrant contracts by providing TANF funds to "second tier" contractors for uses unauthorized under their TANF Subgrants or federal or state law, as specified above.

422.    Heart of David breached its Subgrant contracts by failing to provide services consistent with TANF purposes.

423.    MDHS was damaged by MCEC, FRC, and Heart of David's respective breaches of each's respective TANF Subgrant.

424.    Rescission of contract is an appropriate remedy in cases of fraud or material breach.

76

425. MCEC's admitted fraudulent conduct in transferring TANF funds and its material breaches of its TANF Subgrants warrant rescission of each such Subgrant and the consequent return of the entire amount awarded under each: $1,000,000 for the 2017 TANF Subgrant; $18,843,072 for the 2018 TANF Subgrant; and $19,422,992 for the 2019 TANF Subgrant, for a total of $39,266,064.

426. FRC's material breaches of its TANF Subgrants warrant rescission of each of its TANF Subgrants and the consequent return of the entire amount awarded under each: $12,971,208 for the 2017 TANF Subgrant; $17,620,170 for the 2018 TANF Subgrant; and $7,500,000 for the 2019 TANF Subgrant, for a total of $38,091,378.

427. Heart of David's material breaches of its TANF Subgrants warrant rescission of each of its TANF Subgrants and the consequent return of the entire distributed amount awarded under each: $271,349 under the 2017 TANF Subgrant; $900,000 under the 2018 modification to the 2017 Subgrant; and $756,224 under the 2019 TANF Subgrant, for a total of $1,927,573.

428. In the alternative, MDHS should be awarded damages, including all damages flowing as a consequence of MCEC, FRC, and Heart of David's material breaches, in an amount to be proven at trial.

429. Such consequential damages include, but are not limited to, any liability MDHS may owe to the federal Department of Health and Human Services or the Department of Justice, including any penalties imposed.

## COUNT 9: BREACH OF CONTRACTS FOR MISUSE OF TANF FUNDS

430. Under the terms of their TANF Subgrants, every contract that MCEC and FRC entered into to distribute TANF funds to lower-tier grantees and contractors was for the primary

benefit of MDHS in fulfilling MDHS's obligation to expend TANF funds for lawful TANF purposes.

431. MCEC contracted with the following Defendants: the USM Athletic Foundation; Prevacus; the Marcus Dupree Foundation; Victory Sports Foundation; Priceless Ventures; Brett DiBiase; Brian Jeff Smith; JTS Enterprises; Austin Smith; Lobaki Foundation and Lobaki, Inc.; Will Longwitz; and Soul City Hospitality.

432. FRC contracted with the following Defendants: Teddy DiBiase, Priceless Ventures, and Familiae Orientem; Brett DiBiase; Ted DiBiase, Sr.; SBGI; NCC Ventures; Brian Jeff Smith; and Austin Smith.

433. Each of the recipients of TANF funds pursuant to a contract with MCEC or FRC listed in Paragraphs 431 and 432 above was aware that the source of the funding, and therefore the primary intended beneficiary of the services, was MDHS.

434. Implied in every contract between MCEC or FRC and a recipient of TANF grant funds listed in Paragraphs 431 and 432 above was the obligation that the contract be performed in accordance with state and federal law.

435. State and federal law prohibit the use of TANF funds for non-TANF purposes.

436. Each of the Defendants listed in Paragraphs 431 and 432 breached their contracts by failing to provide services or facilities for TANF purposes and by failing to adhere to state and federal law and is liable to MDHS for all damages caused to MDHS as a consequence of each breach, in an amount to be proven at trial.

## COUNT 10: BREACH OF CONTRACT BY FRC'S TRANSFEREES

437. Under the terms of their TANF Subgrants, every contract that FRC or MCEC entered into to distribute TANF funds to contractors was for the primary benefit of MDHS in fulfilling MDHS's obligation to expend TANF funds for lawful TANF purposes.

438. FRC contracted with SouthTec for SouthTec to provide internet and phone systems.

439. SouthTec knew that the funding source for its payment was MDHS, and thus that MDHS and its program beneficiaries were the third-party beneficiaries of all the services to be performed by SouthTec for FRC.

440. On or about September 28, 2019, FRC paid SouthTec an amount of $118,935.85 as "prepayment" for the expected services over the following year. FRC's source of that payment was TANF and other federal grant funding FRC had received from MDHS.

441. SouthTec breached its contract with FRC, by failing to install the promised communications equipment at FRC offices, by causing unnecessary and unauthorized data usage "overage" charges to FRC (in the amount of approximately $19,000) as a result of SouthTec's own use of a phone line being paid for by FRC, and by refusing to refund payments made by FRC to SouthTec after SouthTec demonstrated that it had breached its services agreement with FRC.

442. SouthTec's breaches of its agreement with FRC damaged MDHS, the known third-party beneficiary of that agreement, in an amount to be proven at the trial of this case.

443. MCEC and FRC contracted with Chase Computer Services, Inc. to provide software services for the management of TANF-related programs pursuant to their TANF Subgrants with MDHS.

444. Chase knew that the funding source for its services was MDHS and thus that MDHS was the ultimate beneficiary of all contractual services Chase agreed to provide.

79

445.    Chase breached its agreement with MCEC and FRC by failing to provide the agreed software and related computer services, causing damage to MDHS as the known third-party beneficiary of that contract in amounts of at least $375,750 in damages.

### COUNT 11: PIERCING THE CORPORATE VEIL AND RECEIVERSHIP OVER MCEC

446.    According to each entity's annual reports filed with the Mississippi Secretary of State, Nancy New is the President of MCEC, Mississippi Dyslexia Center, Inc., and New Learning Resources, Inc.; the sole member of New Learning Resources Online, LLC; the sole member of New Summit School, LLC; the sole officer of Community Education Development Service Center; an incorporator of Autism Spectrum Centers of Mississippi, Inc., Mississippi Autism Center, Inc., and the New Learning Resources Foundation, Inc.; and the sole member of Avalon Holdings, LLC.

447.    According to each entity's annual reports filed with the Mississippi Secretary of State, Jess New is the manager of Magnolia Strategies, LLC; Magnolia Holdings, LLC; and New Learning Resources Online, LLC; an incorporator of Mississippi Autism Center, Inc. and Mississippi Dyslexia Center, Inc; and the sole member of N3 Holdings LLC.

448.    Zachary New was an officer of MCEC and, on information and belief, holds an interest or has joint control of some or all of the entities listed in Paragraph 446 and 447.

449.    MDHS expected faithful performance of MCEC's TANF Subgrants. That expectation was frustrated by Nancy New's authorization and distribution of TANF funds for non-TANF purposes and for unallowable costs.

450.    MCEC and New Learning Resources commingled funds, thereby disregarding the separateness of each corporate identity, and MCEC used TANF funds as a line-of-credit to operate all of the various entities the News controlled.

451.    Nancy New and Jess New created multiple entities with similar names as part of a shell game to hide the transfer of funds.

452.    Nancy New and Zachary New pleaded guilty to numerous counts of fraud with respect to TANF funds transferred from MCEC.

453.    The Court should pierce the corporate veil for all of the above entities which Nancy New and/or her son, Jess New, own or control.

454.    Under Miss. Code Ann. § 15-3-111(1)(c)(iii), a remedy for fraudulent transfer is the appointment of a receiver to take charge of other property of a transferee.

455.    MDHS prays that the Court appoint a receiver over all property in the possession or control of any entity that Nancy New, Zachary New, or Jess New controls.

## COUNT 12: PIERCING THE CORPORATE VEIL AND ALTER EGO LIABILITY

456.    Teddy DiBiase created numerous entities, including Priceless Ventures and Familiae Orientem, for the sole purpose of wrongfully receiving TANF funds for his personal benefit, and he exercised complete control over all entities with respect to the transactions at issue. The Court should therefore pierce the corporate veil and treat Priceless Ventures and Familiae Orientem as the alter ego of Teddy DiBiase.

457.    Brett DiBiase created (or had created for him) Restore2 LLC, for the sole purpose of wrongfully receiving TANF funds for his personal benefit, and he exercised complete control over that entity with respect to the transactions at issue. The Court should therefore pierce the corporate veil and treat Restore2 LLC as the alter ego of Brett DiBiase.

458.    Ted DiBiase, Sr. created DiBiase Development, LLC, for the sole purpose of wrongfully receiving TANF funds for his personal benefit, and he exercised complete control over

81

that entity with respect to the transactions at issue.  The Court should therefore pierce the corporate veil and treat DiBiase Development as the alter ego of Ted DiBiase, Sr.

459.    Brian Jeff Smith created Transformational Ventures, LLC and JTS Enterprises LLC for the sole purpose of wrongfully receiving TANF funds for his personal benefit, and he exercised complete control over those entities with respect to the transactions at issue. The Court should therefore pierce the corporate veil and treat Transformational Ventures, LLC and JTS Enterprises LLC as the alter egos of Brian Jeff Smith.

460.    Nicholas Coughlin created NCC Ventures LLC for the sole purpose of wrongfully receiving TANF funds for his personal benefit, and he exercised complete control over that entity with respect to the transactions at issue.  The Court should therefore pierce the corporate veil and treat NCC Ventures, LLC as the alter ego of Nicholas Coughlin.

461.    Lobaki, Inc. and Lobaki Foundation operated interchangeably, with the same management, employees, and accounts, and disregarded the corporate form. The Court should therefore pierce the corporate veil and treat Lobaki, Inc. and Lobaki Foundation as each other's alter egos.

## COUNT 13: DECLARATORY JUDGMENT AND CLAIM TO QUIET TITLE PROPERTY ACQUIRED BY DEFENDANTS WITH TANF FUNDS

462.    Among the federal laws implied into the terms of each Defendant's contract with MCEC or FRC were 2 CFR § 200.311 (real property acquired or improved under a Federal award) 2 § CFR 200.313 (equipment acquired under a Federal award); and 2 CFR § 200.315 (intangible property, including stocks, acquired under a Federal award).

463.    Under these federal regulations, any real or personal property "acquired under a Federal award," such as a TANF-funded grant "will vest upon acquisition in the non-Federal entity" that first received the grant award from any Federal agency.

82

464.     For all acquisitions with TANF funds by all Defendants in this case, MDHS is the non-Federal entity that first received the grant award from the federal Department of Health and Human Services.

465.      No Defendant in this case had the legal capacity to evade or waive these federal requirements, by contract or otherwise.

466.     MDHS is entitled to a declaratory judgment affirming its existing title to exclusive ownership of any and all property acquired by any Defendant in this case directly or indirectly with proceeds from TANF funding in any amount in excess of $1,000, and is further entitled to judicial orders sufficient to achieve the complete possession and control by MDHS of all such property.

## PRAYER FOR RELIEF

Plaintiff Mississippi Department of Human Services is entitled to and prays for the following relief:

1.     A monetary judgment in favor of MDHS against each Defendant as follows:

   a.   Compensatory damages of at least $5,000,000, for which the USM Athletic Foundation is severally liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which MCEC is severally liable for breach of its TANF Subgrant; for which John Davis is severally liable under Miss. Code Ann. § 31-7-57(1); and for which the USM Athletic Foundation, Brett Favre, John Davis, Nancy New, Zachary New, MCEC, Christi Webb, FRC, Garrig Shields, and Jacob Black are jointly and severally liable as co-conspirators;

83

b.  Compensatory damages of at least $1,900,000, for which Prevacus is
severally liable for negligence, breach of contract, and as MCEC's transferee
under the Mississippi Uniform Fraudulent Transfer Act and as the recipient
of welfare funds under Miss. Code Ann. § 43-1-27; for which Jacob
VanLandingham is severally liable as Prevacus's principal and agent; for
which MCEC is severally liable for breach of its TANF Subgrant; for which
John Davis is severally liable under Miss. Code Ann. § 31-7-57(1); and for
which John Davis, MCEC (through and along with its principals and officers
Nancy New and Zachary New), Brett Favre, Jacob VanLandingham,
Prevacus, Inc., PreSolMD, Jesse New, and N3 Holdings LLC are jointly and
severally liable as co-conspirators;

c.  Compensatory damages of at least $200,000, for which PreSolMD is
severally liable for negligence, breach of contract, and as MCEC's transferee
under the Mississippi Uniform Fraudulent Transfer Act and as the recipient
of welfare funds under Miss. Code Ann. § 43-1-27; for which Jacob
VanLandingham is severally liable as PreSolMD's principal and agent; for
which MCEC is severally liable as damages for breach of its TANF
Subgrant; and for which John Davis, MCEC (through and along with its
principals and officers Nancy New and Zachary New), Brett Favre, Jacob
VanLandingham, Prevacus, Inc., PreSolMD, Jesse New, and N3 Holdings
LLC are jointly and severally liable as co-conspirators;

d.  Compensatory damages of at least $1,309,183, for which Victory Sports
Foundation is severally liable for negligence, breach of contract, and as

MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which Paul Lacoste is severally liable as Victory Sports Foundation's principal, agent, and ultimate transferee; for which MCEC is severally liable for breach of its TANF Subgrant; and for which Nancy New, Zachary New, and John Davis are jointly and severally liable as co-conspirators.

e.  Compensatory damages of at least $371,000, for which Marcus Dupree and the Marcus Dupree Foundation are severally liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which MCEC is severally liable for breach of its TANF Subgrant; and for which Nancy New, Zachary New, and John Davis are jointly and severally liable as co-conspirators;

f.  Compensatory damages of at least $3,147,487, for which Teddy DiBiase, Jr. is severally and individually (as the alter egos of Priceless Ventures and Familiae Orientem) liable for negligence, breach of contract, and as FRC's and MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which FRC is severally liable for $2,447,987 as damages for breach of FRC's TANF Subgrant and for which MCEC is severally liable for $700,000 as damages for MCEC's breach of its TANF Subgrant; and for which John Davis, Garrig Shields, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its

agents Amy Harris and Christi Webb), and Teddy DiBiase, Jr. are jointly and severally liable as co-conspirators;

g. Compensatory damages of at least $30,000, for which NEMFCA is severally liable for negligence, breach of contract, and as FRC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; and for which FRC is severally liable for breach of FRC's TANF Subgrant;

h. Compensatory damages of at least $664,258 (minus $5,000 paid in restitution to MDHS), for which Brett DiBiase is, in his individual and severally capacity and as the alter ego of Restore2 LLC, liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which MCEC is severally liable for $486,258 as damages for breach of its TANF Subgrant, for which FRC is severally liable for $130,000 as damages for breach of its TANF Subgrant; and for which John Davis is severally liable for $48,000 under Miss. Code Ann. § 31-7-57(1); and for which John Davis, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), and Brett DiBiase are jointly and severally liable as co-conspirators;

i. Compensatory damages of at least $41,597.66 for which John Davis is severally liable under Miss. Code Ann. § 31-7-57(1) for having authorized

the hiring of Brett DiBiase despite having fraudulently altered DiBiase's employment application;

j.  Compensatory damages of at least $160,000, for which Rise in Malibu is severally liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which Brett DiBiase is severally liable as the beneficiary of MCEC's transfer under the Mississippi Uniform Fraudulent Transfer Act; and for which John Davis, MCEC (through and along with its principals and officers Nancy New and Zachary New), FRC (through and along with its agents Amy Harris and Christi Webb), Brett DiBiase, and Restore2 LLC are jointly and severally liable as co-conspirators;

k.  Compensatory damages of at least $1,927,573, for which Heart of David Ministries, Inc. is severally liable for negligence, breach of contract, and as John Davis's transferee under the Mississippi Uniform Fraudulent Transfer Act and the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which John Davis and Jacob Black are each severally individually liable under Miss. Code Ann. § 31-7-57(1); and for which John Davis, Teddy DiBiase, Jr., Ted DiBiase, Sr., Heart of David Ministries, Inc., and Jacob Black are jointly and severally liable as co-conspirators or aiders and abettors;

l.  Compensatory damages of at least $250,000, for which Ted DiBiase, Sr., is individually and severally and as the alter ego of DiBiase Development

liable for negligence, breach of contract, and as FRC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27, and for which FRC, Christi Webb, Amy S. Harris, John Davis, and Ted DiBiase, Sr. are jointly and severally liable as co-conspirators;

m. Compensatory damages of at least $250,000, for which SBGI, LLC and Adam Such are severally liable for negligence, breach of contract, and as FRC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; for which FRC is severally liable for breach of its TANF Subgrant; and for which John Davis, Teddy DiBiase, Jr., Adam Such, SBGI, LLC, FRC, and Christi Webb are jointly and severally liable as co-conspirators;

n. Compensatory damages of at least $168,733.25, for which Nicholas Coughlin is, individually and severally, as the alter ego of NCC Ventures, liable for negligence, breach of contract, and as FRC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; of which FRC is severally liable for $49,999.98 for breach of its TANF Subgrant; MCEC is severally liable for $45,833.27 for breach of its TANF Subgrant; and John Davis and Jacob Black are each severally liable for $72,900 for violation of Miss. Code Ann. § 31-7-57; and for which John Davis, Teddy DiBiase, Jr., Nicholas Coughlin, NCC Ventures, Jacob Black, MCEC, Nancy New, FRC, and Christi Webb are jointly and severally liable as co-conspirators;

88

o.  Compensatory damages of at least $608,650, for which Brian Jeff Smith is, individually and severally, as the alter ego of Transformational Ventures, LLC and JTS Enterprises LLC, liable for negligence, breach of contract, and as MCEC's and FRC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; of which JTS Enterprises, to the extent it has a corporate existence separate and apart from Brian Jeff Smith, is severally liable for $365,050; of which MCEC is severally liable for $515,050 for breach of its TANF Subgrant; and for which John Davis, Brian Jeff Smith, Christi Webb, FRC, MCEC, Nancy New, and JTS Enterprises are jointly and severally liable as co-conspirators;

p.  Compensatory damages of at least $426,397, for which Austin Smith is individually and severally liable as the transferee of FRC and MCEC under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; of which FRC is severally liable for $216,127 for breach of its TANF Subgrant; of which MCEC is severally liable for $210,270, for breach of its TANF Subgrant; and for which John Davis, Austin Smith, Christi Webb, FRC, MCEC, and Nancy New are jointly and severally liable as co-conspirators;

q.  Compensatory damages of at least $500,000, for which Magnolia Strategies and/or Jess New, as the alter ego of Magnolia Strategies, are jointly and severally liable for negligence, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare

funds under Miss. Code Ann. § 43-1-27, and for which MCEC and Nancy New, as the alter ego of MCEC, are liable for breach of MCEC's TANF Subgrant Agreement;

r.   Compensatory damages of at least $54,221, for which Jess New is liable as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act, and for which MCEC and Nancy New, as the alter ego of MCEC, are liable for breach of MCEC's TANF Subgrant Agreement;

s.   Compensatory damages of at least $795,000, for which Lobaki Foundation and Lobaki, Inc. are liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27, and for which MCEC and Zachary and Nancy New are liable as a breach of MCEC's TANF Subgrant Agreement;

t.    Compensatory damages of at least $318,325, for which Inside Capitol LLC and William Longwitz are jointly and severally liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27, and for which MCEC and Nancy New, as the alter ego of MCEC, are liable for breach of MCEC's TANF Subgrant Agreement;

u.   Compensatory damages of at least $200,000, for which Soul City Hospitality is liable for negligence, breach of contract, and as MCEC's transferee under the Mississippi Uniform Fraudulent Transfer Act and as the recipient of welfare funds under Miss. Code Ann. § 43-1-27; and for which

MCEC and Nancy New, as the alter ego of MCEC, are liable for breach of MCEC's TANF Subgrant Agreement;

v.  Compensatory damages of at least $19,000, for which SouthTec, Inc., is liable for breach of contract;

w.  Compensatory damages of at least $375,750, for which Chase Computer Services, Inc. is liable for breach of contract;

x.  Compensatory damages of at least $700,000 and up to $1,785,217, for which New Learning Resources is liable as the transferee of MCEC under the Mississippi Uniform Fraudulent Transfer Act;

y.  Compensatory damages, in an amount to be proven at trial, equaling the total of all misuses of TANF funds by MCEC that would have been disclosed had Williams, Weiss, Hester & Co. performed its 2017 independent audit of MCEC in a non-negligent manner;

2.  Rescission of the TANF Subgrants between MDHS and MCEC, FRC, and Heart of David, and MCEC's consequent return of all funds obtained thereunder ($39,265,994); FRC's consequent return of all funds obtained thereunder ($38,091,378); and Heart of David's consequent return of all funds obtained thereunder ($1,927,573);

3.  Pre-judgment interest on all liquidated, certain sums listed above, at a compound rate of 9.62% (the composite rate for bonds issued as of the date of the filing of the Complaint), running from the date of each respective breach of contract (the date MCEC or FRC distributed, and each Defendant accepted, TANF funds for non-TANF purposes or uses unallowable under federal law), under Miss. Code Ann. § 75-17-7;

4.      Post-judgment interest, at a compound rate of 9.62%, the composite rate for bonds issued as of the date of the filing of the Complaint, running from the date judgment is entered in MDHS's favor;

5.      Consequential damages, in the amount of the 5% penalty MDHS potentially faces from the federal government under 45 CFR § 263.10, on all misused TANF funds, against all Defendants bearing responsibility for the misuse of TANF funds;

6.      Punitive damages, in an amount sufficient to deter similar future misconduct, against all Defendants found liable of conspiring to defraud MDHS through MCEC's and FRC's false statements that the TANF funds distributed would be used for lawful TANF purposes and in accordance with state and federal law;

7.      Attorneys' fees, litigation costs, and investigation costs incurred by MDHS;

8.      A declaratory judgment, pursuant to Miss. R. Civ. P. 57, piercing the corporate veil of all entities owned or controlled by Nancy New, Zachary New, or Jesse New;

9.      A declaratory judgment, pursuant to Miss. R. Civ. P. 57, piercing the corporate veil of Priceless Ventures, Familiae Orientem, DiBiase Development, Transformational Ventures, JTS Enterprises, NCC Ventures, and Lobaki;

10.     A declaratory judgment, pursuant to Miss. R. Civ. P. 57, declaring and adjudicating MDHS's exclusive title and ownership of all real and personal property acquired, at an acquisition cost of $1,000 or more, as a direct or indirect result of any transfer of TANF funds alleged above, and judicial orders sufficient to accomplish the liquidation of all such property;

11.     An injunction under Miss. Code Ann. § 15-3-111 against further disposition or transfer of any assets with which a judgment of fraudulent transfer may be satisfied;

92

12.     Pre-judgment attachment of all real property held by any entity owned or controlled by Nancy New, Zachary New, or Jesse New, under Miss. Code Ann. § 15-3-111;

13.     Appointment of a receiver to take charge of the assets of all entities owned or controlled by Nancy New, Zachary New, or Jesse New; and

14.     All further relief that the Court finds justified by the evidence to be presented, and in order to fulfill the authority of the Court to defend its jurisdiction, the authority of its judgments, and the public interest.

This the 13th day of December, 2022.

Respectfully submitted,

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

By Its Attorneys,
JONES WALKER LLP

By:/s/ Kaytie M. Pickett
        KAYTIE M. PICKETT

Adam Stone, Bar No. 10412
Kaytie M. Pickett, Bar No. 103202
Clarence Webster III, Bar No. 102111
JONES WALKER LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi 39205-0427
Telephone (601) 709-3344
Telecopy (601) 949-4804
Email astone@joneswalker.com
        kpickett@joneswalker.com
        cwebster@joneswalker.com

Stephen F. Schelver, Bar No. 101889
Special Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205

#100657939v13

Telephone: (601) 359-3680
Facsimile: (601) 359-2003
Email stephen.schelver@ago.ms.gov